INSD Pro Se Civil Generic Complaint (unrelated to imprisonment) 12/19 (Adapted from AO Pro Se 1 (Rev. 12/16) Complaint for a Civil Case)

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Indiana

**FILED**

OCT 06 2022

**U.S. CLERK'S OFFICE
INDIANAPOLIS, INDIANA**

Case No. _____

*(to be filled in by the Clerk's Office)*

## Jennifer J. Reinoehl

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

-v-

## see attached

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names.)*

Jury Trial: *(check one)*  ☐ Yes  ☑ No

1 : 2 2 -CV- 1 9 7 4 JRS -TAB

## COMPLAINT FOR A CIVIL CASE

---

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date, the full name of a person known to be a minor, or a complete financial account number. A filing may include *only*: the last four digits of a social security number, the year of an individual's birth, a minor's initials, and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievances, witness statements, evidence, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

## I.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

[✓] Federal question          [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

U.S. Constitution Article 1, 1st, 14th, 17th Amendments, 42 U.S.C.§1983 _____

_____

_____

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

a.    If the plaintiff is an individual:

The plaintiff, *(name)*_____, is a citizen of

the State of *(name)*_____, OR is a citizen of

*(foreign nation)*_____

b.    If the plaintiff is a corporation, partnership, or other entity:

The plaintiff, *(name)* _____, is incorporated under

the laws of the State of *(name)*_____, and has its

principal place of business in the State of *(name)*_____.

Or is incorporated under the laws of *(foreign nation)*_____,

and has its principal place of business in *(name)*_____.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

INSD Pro Se Civil Generic Complaint (unrelated to imprisonment) 12/19 (Adapted from AO Pro Se 1 (Rev. 12/16) Complaint for a Civil Case)

2. The Defendant(s)

   a. If the defendant is an individual:

   The defendant, *(name)*_____, is a citizen of

   the State of *(name)*_____, OR is a citizen of

   *(foreign nation)*_____.

   b. If the defendant is a corporation, partnership, or other entity:

   The defendant, *(name)* _____ , is incorporated under

   the laws of the State of *(name)*_____, and has its

   principal place of business in the State of *(name)*_____.

   Or is incorporated under the laws of *(foreign nation)*_____,

   and has its principal place of business in *(name)*_____.

   *(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3. The Amount in Controversy

   The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

_____

_____

_____

## II.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Jennifer Reinoehl |
| Street Address | 51860 Cheryl Dr. |
| City and County | Granger, St. Joseph |
| State and Zip Code | IN, 46530 |
| Telephone Number | 574 302 6088 |
| E-mail Address | commercialsonly@juno.com |

INSD Pro Se Civil Generic Complaint (unrelated to imprisonment) 12/19 (Adapted from AO Pro Se 1 (Rev. 12/16) Complaint for a Civil Case)

## B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation or other entity. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | John H. Merrill (individual and official capacity) |
| Job or Title *(if known)* | Alabama Secretary of State |
| Street Address | 600 Dexter Avenue, Suit S-105 |
| City and County | Montgomery, Montgomery County |
| State and Zip Code | AL, 36130 |
| Telephone Number | 334-242-7200 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | Katie M. Hobbs (individual and offical capacity) |
| Job or Title *(if known)* | Arizona Secretary of State |
| Street Address | 1700 W. Washington St., Floor 7 |
| City and County | Phoenix, Maricopa County |
| State and Zip Code | AZ, 85997 |
| Telephone Number | (602) 542-9781 |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | Alejandro Padilla (individual capacity) |
| Job or Title *(if known)* | Senator |
| Street Address | 255 E. Temple St., Suite 1860 |
| City and County | Los Angeles, Los Angeles County |
| State and Zip Code | CA, 90012 |
| Telephone Number | (310) 231-4494 |
| E-mail Address *(if known)* | |

INSD Pro Se Civil Generic Complaint (unrelated to imprisonment) 12/19 (Adapted from AO Pro Se 1 (Rev. 12/16) Complaint for a Civil Case)

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

(see attached)

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

(see attached)

INSD Pro Se Civil Generic Complaint (unrelated to imprisonment) 12/19 (Adapted from AO Pro Se 1 (Rev. 12/16) Complaint for a Civil Case)

**V.     Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be  served. I understand that my failure to keep a current address on file with the Clerk's Office may result  in the dismissal of my case.

Date of signing:          October 6, 2022

Signature of Plaintiff

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

JENNIFER J. REINOEHL,                                              )
PLAINTIFF                                                          )
v.                                                                )

AL SecState JOHN H. MERRILL, in his individual and              )
official capacity, AZ SecState KATIE M. HOBBS, in her          )
individual and official capacity, ALEJANDRO PADILLA, in  )
his individual capacity, CA SecState SHIRLEY N. WEBER, in     )   Case No.
her official capacity, LAUREL M. LEE, in her individual       )
capacity, FL SecState CORD BYRD, in his official capacity,     )
GA SecState BRAD J. RAFFENSPERGER, in his individual )
and official capacity, Ex. Dir. IL St. Board of Elections      )
BERNADETTE MATTHEWS, in her official capacity,                 )
CONNIE LAWSON, in her individual capacity, IN SecState    )
HOLLI SULLIVAN, in her official capacity, MD SecState      )
JOHN WOBENSMITH, in his individual and official capacity,
MA SecCommon WILLIAM F. GALVIN, in his individual and
official capacity, MI SecState JOCELYN F. BENSON, in her )
individual and official capacity, MO SecState JOHN R.         )
ASHCROFT, in his individual and official capacity, COREY )
STAPLETON, in his individual capacity, MT SecState            )
CHRISTI JACOBSEN, in her individual capacity, NV              )
SecState BARBARA CEGAVSKE, in her individual and             )
official capacity, NY St. Elect. Comm. ANDREW J. SPANO, )
in his individual and official capacity, NY St. Elect. Comm.   )
ANTHONY J. CASALE, in his individual and official capacity,
NC Board of Elect. Ex. Dir. KAREN B. BELL, in her            )
individual and official capacity, OK SecState Elect. Bd.      )
PAUL ZIRIAX, in his individual and official capacity,          )
BEVERLY A. CLARNO, in her individual capacity, OR            )
SecState SHEMIA P. FAGAN, in her official capacity,           )
KATHY BOOCKVAR, in her individual capacity, PA               )
SecCommon LEIGH M. CHAPMAN, in her official capacity,)
RUTH R. HUGHES, in her individual capacity, TX SecState    )
JOHN B. SCOTT, in his official capacity,                          )
DEFENDANTS                                                        )

## VERIFIED COMPLAINT

Comes now JENNIFER REINOEHL (herein "Plaintiff" or "Reinoehl"), on behalf of

herself, pro se, and brings this Complaint for immediate injunctive and declaratory relief against

1

John H. Merrill, Katie M. Hobbs, Alejandro Padilla, Shirley N. Weber, Laurel M. Lee, Cord

Byrd, Brad J. Raffensperger, Bernadette Matthews, Connie Lawson, Holli Sullivan, John C.

Wobensmith, William F. Galvin, Jocelyn F. Benson, John R. Ashcroft, Corey Stapleton, Christi

Jacobsen, Barbara Cegavske, Andrew J. Spano, Anthony J. Casale, Karen B. Bell, Frank Larose,

Paul Ziriax, Beverly A. Clarno, Shemia P. Fagan, Kathy Boockvar, Leigh M. Chapman, Ruth R.

Hughs, and John B. Scott (collectively herein "Defendants") for failing to take adequate steps to

protect the fundamental right to vote.

## I.   PARTIES TO THE COMPLAINT

### A. The Plaintiff

1.      Jennifer J. Reinoehl resides at 51860 Cheryl Dr., Granger, St. Joseph County, IN, 46530

with phone number: 574-302-6088.

### B. The Defendants

2.      John H. Merrill, is the Alabama Secretary of State, who does business at the state Capitol

Building, Suite S-105, 600 Dexter Avenue, Montgomery, (Montgomery County) AL, 36130 and

is being sued in his individual and official capacity. As a constitutional officer and a member of

the State's executive department, he is Alabama's chief election official and was in that position

during the 2020 election.

3.      Katie M. Hobbs is the Arizona Secretary of State, who does business at 1700 W.

Washington St., Floor 7, Phoenix, (Maricopa County) AZ, 85997, and is being sued in her

individual and official capacity. As a constitutional officer and a member of the State's executive

department, she is Arizona's chief election official and was in that position during the 2020

election.

4.      Senator Alejandro Padilla is the former California Secretary of State, who does business

at 255 E. Temple St., Suite 1860, Los Angeles, (Los Angeles County) CA, 90012, and is being sued in his individual capacity. As a former California Secretary of State and a member of the State's executive department, he was California's chief election official during the 2020 election.

5.      Shirley N. Weber is the California Secretary of State, who does business at 1500 11th Street, Sacremento, (Sacramento County) CA, 95814, and is being sued in her official capacity. As a former California Secretary of State and a member of the State's executive department, she is California's chief election official.

6.      Laurel M. Lee is the former Florida Secretary of State, who resides in Brandon, (Hillsborough County) Florida and is being sued in her individual capacity. As a former Florida Secretary of State and a member of the State's executive department, she was Florida's chief election official during the 2020 election.

7.      Cord Byrd is the Florida Secretary of State, who does business at R.A. Gray Building 500 South Bronough Street Tallahassee, (Leon County) Florida 32399-0250, and is being sued in his official capacity. As a member of the State's executive department, he is Alabama's chief election official and was in that position during the 2020 election..

8.      Brad J. Raffensperger is the Georgia Secretary of State, who does business at 214 State Capitol, Atlanta, GA, (Fulton County) 30334, and is being sued in his individual and official capacity. As a constitutional officer and a member of the State's executive department, he is Georgia's chief election official and was in that position during the 2020 election.

9.      Bernadette Matthews is the Executive Director of the Illinois State Board of Elections, who does business at 69 W. Washington Suite LL08, Chicago, (Cook County) IL 60602, and is being sued in her official capacity. As the executive director of the Illinois State Board of Elections, she is Illinois' chief election official and was in that position during the 2020 election.

10.     Connie Lawson is the former Indiana Secretary of State, who resides at 1965 Knightsbridge Road, Danville, (Hendricks County) IN, 46122, and is being sued in her individual capacity. As a former Indiana Secretary of State and a member of the State's executive department, she was Indiana's chief election official during the 2020 election.

11.     Holli Sullivan is the Indiana Secretary of State, who does business at 200 W. Washington St., Room 201, Indianapolis, (Marion County) IN 46204, and is being sued in her official capacity. As a constitutional officer and a member of the State's executive department, she is Indiana's chief election official.

12.     John C. Wobensmith is the Maryland Secretary of State, who does business at Jeffrey Building, 16 Francis Street, Annapolis, (Anne Arundel County ) MD 21401, and is being sued in his individual and official capacity. As a constitutional officer and a member of the State's executive department, he is Maryland's chief election official and was in that position during the 2020 election.

13.     William F. Galvin is the Massachusetts Secretary of Commonwealth, who does business at McCormack Building, One Ashburton Place Boston, (Suffolk County) MA, 02108, and is being sued in his individual and official capacity. As a constitutional officer and a member of the State's executive department, he is Massachusetts' chief election official and was in that position during the 2020 election.

14.     Jocelyn F. Benson is the Michigan Secretary of State, who does business at Richard H. Austin Building - 4th Floor, 430 W. Allegan St., Lansing, (Ingham County) MI, 48918, and is being sued in her individual and official capacity. As a constitutional officer and a member of the State's executive department, she is Michigan's chief election official and was in that position during the 2020 election.

15.     John R. Ashcroft is the Missouri Secretary of State, who does business at 600 West Main

Street, Jefferson City, (Cole County) MO, 65101, and is being sued in his individual and official

capacity. As a constitutional officer and a member of the State's executive department, he is

Missouri's chief election official and was in that position during the 2020 election.

16.     Corey Stapleton is the former Montana Secretary of State, who resides at 3614 Crater

Lake Avenue, Billings, (Yellowstone County) MT, 59102, and is being sued in his individual

capacity. As a former Montana Secretary of State and a member of the State's executive

department, he was Montana's chief election official during the 2020 election.

17.     Christi Jacobsen is the Montana Secretary of State, who does business at Montana

Capitol Building, Rm 260, P.O. Box 202801, Helena, (Lewis and Clark County) MT, 59620-

2801, and is being sued in her official capacity. As a constitutional officer and a member of the

State's executive department, she is currently Montana's chief election official.

18.     Barbara Cegavske is the Nevada Secretary of State, who does business at Nevada State

Capitol Building, 101 North Carson Street, Suite 3, Carson City, NV, 89701, and is being sued in

her individual and official capacity. As a constitutional officer and a member of the State's

executive department, she is Nevada's chief election official and was in that position during the

2020 election.

19.     Andrew J. Spano is the New York State Elections Commissioner, who does business at

NYS Board of Elections, 40 North Pearl Street, Suite 5, Albany, (Albany County) NY, 12207-

2729, and is being sued in his individual and official capacity. As a co-Commissioner of the

State Board of Elections, he is New York State's chief election official and was in that position

during the 2020 election.

20.     Anthony J. Casale is the New York State Elections Commissioner who does business at

NYS Board of Elections, 40 North Pearl Street, Suite 5, Albany, (Albany County) NY, 12207-2729, and is being sued in his individual and official capacity. As a co-Commissioner of the State Board of Elections, he is New York State's chief election official and was in that position during the 2020 election.

21.     Karen B. Bell is the North Carolina Board of Elections Executive Director, who does business at 430 N. Salisbury Street, P.O. Box 27255, Raleigh, (Wake County) NC, 27611-7255, is being sued in her individual and official capacity. As a Executive Director of the State Board of Elections, she is North Carolina's chief election official and was in that position during the 2020 election.

22.     Paul Ziriax is the Oklahoma Secretary of the State Election Board and chief state election official, who does business at 2300 N. Lincoln Blvd, Room G28, State Capitol Building, Oklahoma City, (Oklahoma County) OK, 73105, and is being sued in his individual and official capacity. As a constitutional officer and a member of the State's executive department, he is Oklahoma's chief election official and was in that position during the 2020 election.

23.     Beverly A. Clarno is the former Oregon Secretary of State, who resides at 6811 Thunderbird Crt., Redmond, (Deschutes County) OR, 97756-9290, and is being sued in her individual capacity. As a former Oregon Secretary of State and a member of the State's executive department, she was Oregon's chief election official during the 2020 election.

24.     Shemia P. Fagan is the Oregon Secretary of State, who does business at 900 Court Street NE, Capitol Room 136, Salem, (Marion County) OR, 97301, and is being sued in her official capacity. As a constitutional officer and a member of the State's executive department, she is Oregon's current chief election official.

25.     Kathy Boockvar is the former Pennsylvania Secretary of Commonwealth, who resides at

76 Pine Valley Rd, Doylestown, (Bucks County) PA, 18901, and is being sued in her individual capacity. As a former Pennsylvania Secretary of Commonwealth and a member of the State's executive department, she was Pennsylvania's chief election official during the 2020 election.

26.     Leigh M. Chapman is the Pennsylvania Secretary of Commonwealth, who does business at 302 North Office Building, 401 North Street, Harrisburg, (Dauphin County) PA, 17120 and is being sued in her official capacity. As a constitutional officer and a member of the State's executive department, she is Pennsylvania's chief election official.

27.     Ruth R. Hughs, is the former Texas Secretary of State, who does business at 303 Colorado Street, Suite 2000, Austin, (Travis County) TX, 78701, and is being sued in her individual capacity. As a former Texas Secretary of State and a member of the State's executive department, she was Texas' chief election official during the 2020 election.

28.     John B. Scott is the Texas Secretary of State, who does business at 1100 Congress Capitol Bldg., Room 1E.8, Austin, (Travis County) TX, 78701, and is being sued in his official capacity. As a constitutional officer and a member of the State's executive department, he is Texas' chief election official.

## II.     BASIS FOR JURISDICTION AND VENUE

29.     The U.S. District Court for the Southern District of Indiana has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, which provides Federal Courts have jurisdiction over cases involving a federal question—U.S. Constitutional Rights granted under Article I and Amendment 17 of the U.S. Constitution requiring a representative government elected by the people, and 28 U.S.C. § 1367, and the Court may issue a declaratory judgement and provide for further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

30.     This action is brought under 42 U.S.C.§1983 to redress a deprivation of rights secured by

Page **7** of 33

the United States Constitution and its 1st and 14th Amendments that was committed by persons in government employ under the color of state law.

31.    The court has personal jurisdiction because Defendants Connie Lawson and Holli Sullivan are both situated in the Southern District of Indiana with Connie Lawson being situated in and conducting business in Danville, IN, and Holli Sullivan being situated in and conducting business in Indianapolis, IN.

32.    Venue is proper because under 28 U.S. Code § 1391 Defendants, Connie Lawson and Holli Sullivan, are located in the Southern District of Indiana and are subject to the Court's personal jurisdiction with respect to this action.

33.    An actual and justiciable controversy exists between the parties.

## III.    STATEMENTS OF FACTS

34.    Herein, "ballot access" shall solely refer to having a candidate's name pre-printed on the ballot and shall not refer to write-in candidate status, which is inferior and not truly an "equal" alternative.

35.    Jennifer Reinoehl is an independent voter who has voted in every election in which she was able since she turned 18 years old.

36.    To the best of her knowledge, she has never voted a straight ticket (i.e. solely for all candidates of a single political party). She has voted for not only Democrats and Republicans, but also for Libertarians, Green Party candidates, Constitution Party Candidates, and other third party candidates and independents and frequently votes for members of completely different political parties all on the same ballot.

37.    For example, on one former ballot, Reinoehl voted for Senate candidate Joe Donnelly (Democrat) and U.S. Representative Candidate Jackie Walorski (Republican).

38.     Due to unequal ballot access laws in the state, Indiana, in which she is allowed to vote, she has repeatedly had to write-in the candidate she wishes to vote for in past Presidential elections.

39.     During the 2020 Presidential election, as in other previous elections, unequal ballot access prevented the candidate of Reinoehl's choice from getting on the ballot in all states, causing the candidate an insurmountable disadvantage, and preventing Plaintiff and others similarly situated from electing a candidate most likely to represent them and not business interests.

40.     Reinoehl is frequently limited to only seeing and choosing between Democrat or Republican candidates in most elective positions (or choosing not to vote for that position) because third parties are unconstitutionally kept off the ballot in her own state, Indiana, through unequal ballot access laws.

41.     Both Republicans and Democrats frequently have used and did use unequal ballot access laws during the 2020 election to challenge candidates from third parties and to prevent them from having ballot access.

42.     The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution guarantees "equal protection of the laws."

43.     Here, voters who are members of the Republican and Democrat parties or who support those parties always get to see their candidates listed on every state ballot and never have to worry that their write-in vote will not be counted for any reason.

44.     On the contrary, voters who are members of third parties or who vote for third parties or those who vote for independent candidates rarely see their candidates on the ballot, know that undecided voters will not get a chance to see their candidate on the ballot in every state, and are

aware that if they make an error writing in a candidate their vote will not be counted.

45.     In Alabama, to obtain ballot access under Alabama Code Title 17, Republicans and Democrats are not required to get any signatures when running for U.S. Senator or U.S. Representative and only need 350-500 signatures to get a Presidential candidate on the ballot. In contrast, third parties and independents need 51,000 signatures to be on the ballot as a U.S. Senator or U.S. Representative candidate and 5,000 signatures to be on the ballot as a Presidential candidate in addition to numerous other differing bureaucratic requirements.

46.     In Arizona, to obtain ballot access under Arizona Revised Statutes Title 16, Republicans and Democrats only need 500 signatures to get a candidate on the ballot in a Federal Election. In contrast, third parties and independents need about 37,000 signatures to get a candidate on the ballot in addition to numerous other differing bureaucratic requirements.

47.     In California, to obtain ballot access under the California Election Code Div.8, Republicans need about 48,000 signatures and Democrats need about 26,000 signatures to get a candidate on the Federal election ballot. In contrast, third parties and independents need about 197,000 signatures to be on the Federal election ballot in addition to numerous other differing bureaucratic requirements.

48.     In Florida, to obtain ballot access under Florida Statute Title IX Chapter 99, Republicans and Democrats are not required to get any signatures when running to be on the Federal election ballot. In contrast, third parties and independents need 131,000 signatures to be on the Federal election ballot in addition to numerous other differing bureaucratic requirements.

49.     In Georgia, to obtain ballot access under Georgia Code Title 21, Republicans and Democrats are not required to get any signatures when running to be on the Federal election ballot. In contrast, third parties and independents need about 72,000 signatures to be on the

Federal election ballot in addition to numerous other differing bureaucratic requirements.

50.     In Illinois, to obtain ballot access under Illinois Election Code 10 ILCS 5/, Republicans and Democrats need only 3000-5000 signatures when running to be on the Federal election ballot. In contrast, third parties and independents need 25,000 signatures to be on the Federal election ballot in addition to numerous other differing bureaucratic requirements.

51.     In Indiana, to obtain ballot access under Indiana Code Title 3, Republicans and Democrats need only 4,500 signatures when running to be on the Federal election ballot. In contrast, third parties and independents need 45,000 signatures to be on the Federal election ballot in addition to numerous other differing bureaucratic requirements.

52.     In Maryland, to obtain ballot access under Maryland Election Law Code Ann. §5, Republicans and Democrats are not required to get any signatures when running for U.S. Senator or U.S. Representative and only need 3,200 signatures to get a Presidential candidate on the ballot. In contrast, third parties and independents need about 10,000 signatures to be on the ballot as a U.S. Senator or Presidential candidate, about 5,250 signatures to be on the ballot as a U.S. Representative candidate in addition to numerous other differing bureaucratic requirements.

53.     In Massachusetts, to obtain ballot access under the General Laws of Massachusetts Part I, Title VIII, Chapter 53, Republicans and Democrats need only 2,500 signatures when running to be on the Federal election ballot. In contrast, third parties and independents need 10,000 signatures to be on the Federal election ballot in addition to numerous other differing bureaucratic requirements.

54.     In Michigan, to obtain ballot access under Michigan Election Law Act 116 of 1954, Republicans and Democrats need only about 11,000 signatures when running to be on the Federal election ballot. In contrast, third parties and independents need 30,000 signatures to be

on the Federal election ballot in addition to numerous other differing bureaucratic requirements.

55.     In Missouri, to obtain ballot access under the Revised Statutes of Missouri Chapter 115, Republicans and Democrats are not required to get any signatures when running for U.S. Senator or U.S. Representative and only need 5,000 signatures to get a Presidential candidate on the ballot. In contrast, third parties and independents need about 10,000 signatures to be on the Federal election ballot in addition to numerous other differing bureaucratic requirements.

56.     In Montana, to obtain ballot access under Mont. Code Ann. § 13-10, Republicans and Democrats are not required to get any signatures for any Federal election candidates. In contrast, third parties and independents need 17,000 signatures to be on the ballot as a U.S. Senator or U.S. Representative candidate and 5,000 signatures to be on the ballot as a Presidential candidate in addition to numerous other differing bureaucratic requirements.

57.     In Nevada, to obtain ballot access under Nevada Code Title 24 Chapter 293, Republicans and Democrats are not required to get any signatures when running for President or pay a filing fee. In contrast, third parties and independents need about 9,600 signatures to be on the ballot and need to pay a $250.00 filing fee to be on the ballot as a Presidential candidate in addition to numerous other differing bureaucratic requirements.

58.     In New York, to obtain ballot access under New York Election Law Article 6, Republicans and Democrats only need 15,000 signatures when running for U.S. Senator, only 1,062 signatures when running for U.S. Representative and only need 5,000 signatures for a Presidential candidate to get on the ballot. In contrast, third parties and independents need 45,000 signatures to be on the ballot as a U.S. Senator or Presidential candidate, 3,500 signatures when running for U.S. Representative in addition to numerous other differing bureaucratic requirements.

59.     In North Carolina, to obtain ballot access under North Carolina General Statutes Chapter

163, Republicans and Democrats are not required to get any signatures when running for U.S.

Senator or U.S. Representative and only need 10,000 signatures to get a Presidential candidate

on the ballot. In contrast, third parties and independents need about 71,000 signatures to be on a

Federal election ballot in addition to numerous other differing bureaucratic requirements.

60.     In Oklahoma, to obtain ballot access under Oklahoma Statutes Title 26, Republicans and

Democrats need only 5,000 signatures when running to be on the Federal election ballot or a

$5,000 filing fee. In contrast, third parties and independents about 36,000 signatures to be on the

Federal election ballot or a $35,000 filing fee in addition to numerous other differing

bureaucratic requirements.

61.     In Oregon, to obtain ballot access under Oregon Revised Statute Chapter 248,

Republicans and Democrats need only 1,000 signatures when running to be on the Federal

election ballot. In contrast, third parties and independents need 24,000 signatures to be on the

Federal election ballot in addition to numerous other differing bureaucratic requirements.

62.     In Pennsylvania, to obtain ballot access under Pennsylvania Chapter 25, Republicans and

Democrats only need 2,000 signatures when running for U.S. Senator or President and only

1,000 when running for U.S. Representative to get on the ballot. In contrast, third parties and

independents need about 54,000 signatures to be on the ballot as a U.S. Senator or U.S.

Representative candidate and 5,000 signatures to be on the ballot as a Presidential candidate in

addition to numerous other differing bureaucratic requirements.

63.     In Texas, to obtain ballot access under Texas Election Code Section 181, Republicans

need only 4,500 and Democrats need only about 5,000 signatures when running to be on the

Federal election ballot. In contrast, third parties and independents need 90,000 signatures to be

on the Federal election ballot in addition to numerous other differing bureaucratic requirements.

64.  Even when third party candidate show they have a following and collect the excessive number of required signatures, they are denied equal ballot access for typographical errors simply because they neglect to sign documents, fax them instead of depositing them in person, or because they place two addresses on the forms (due to moving during the process of obtaining ballot access).[1]

65.  As an independent who votes across parties in every election and bases her vote solely on the candidates platform and past voting or civic history, Reinoehl and others similarly situated will not sign allegiance to any political party, yet signatures showing loyalty are often necessary for third parties to get on the ballot.

66.  Reinoehl has repeatedly sent letters and e-mails, met with workers in the offices of those who have been elected, and attended council, community, and school board meetings. All these positions were filled at the time by either Republicans or Democrats. Letters and e-mails are usually answered with what looks like a pre-printed response that frequently does not address the issue Reinoehl wrote about because of its pre-fabricated nature. No matter how many other citizens show up to the meetings in opposition to the issue at hand and how few are for it, "representatives" will vote for it.

67.  For example, on or about October 13, 2020, Jennifer Reinoehl attended a St. Joseph County Council meeting at which about 10 persons spoke in favor of converting farmland located over an aquifer into industrial zoned land. Despite the fact that the County's own land use representative was against it, despite the fact that by converting the land they went against the County plan, despite the fact that more than 1000 acres of land existed throughout the county

---

[1] See for example https://apnews.com/article/election-2020-pennsylvania-elections-joe-biden-courts-cbd7947a020a1c5983a69e804ce3a5f8

that had already been designated or was in a County plan to become industrial and was unused, despite the fact there was a signed petition against it with hundreds of signatures, and despite the fact it took almost four hours for all those citizens who showed up to speak against the measure to have a chance to give their reasons against it, the Council adopted the measure, converted the land from agriculture to industrial, and is now constructing a toxic battery factory (among other factories) on it.

68.    Councilman Richard Pfeil, a Republican, who was supposedly Reinoehl's "representative," voted for the measure even though she spoke out against it and no one from his district spoke in favor of the plan.

69.    Over 80 percent of Americans want term limits and 75 percent do not want lawmakers to trade stocks while in office. These beliefs have solid reasoning behind them. If our government was truly representative as the U.S. Constitution demands, Congress would have already passed laws in alliance with voters wishes on these topics.[2,3]

## IV.    ARGUMENT

70.    After more than 100 years of elections without ballot limitations, ballot access restrictions were put in place by Republicans and Democrats after 1900 A.D. and have grown more restrictive since.

71.    Prior to 1900 A.D., third parties and independents regularly filled the Senate and House of Representatives.

72.    Although each state currently determines its own ballot access laws, it is arbitrary and capricious when those within the same state there are different requirements for Republicans and Democrats than what there are for other parties and independents.

---

[2] https://www.judiciary.senate.gov/imo/media/doc/Tomboulides%20Testimony.pdf
[3] https://thehill.com/homenews/news/588630-76-percent-of-voters-support-banning-lawmakers-from-trading-stocks-poll/

73.    Not only is this extremely confusing for potential candidates, unequal ballot access laws

serve no purpose other than ensuring Republicans and Democrats always get ballot

representation, making it easier for Republicans and Democrats to remove potential competitors

from the ballot and/or resign them to write-in status, and solely placing in the hands of

Republicans and Democrats the ability to deny write-in votes for those candidates.

74.    In the 2020 election, both Republicans and Democrats used unequal ballot access laws to

manipulate the election with varying degrees of success by removing or attempting to remove

third parties and independents from the ballot.

75.    This was not the first time these two political parties have edged third parties out of the

election.

76.    With nearly half a billion dollars in funds raised for the 2020 election alone—mostly

contributed by corporations using PACs as fronts, by wealthy businessmen, and by lobbyists

expecting legislative help from the future candidates to forward their self-serving interests—

Republicans and Democrats are not placing unbiased representatives of the people on the ballot

but instead choosing candidates willing to be slaves to the few but wealthy interests that support

them.

77.    Republicans and Democrats make those wishing to run for office in their party sign a

contract promising to vote how the party tells them to vote—whether or not the people who elect

those candidates want them to vote that way.

78.    Having write-in ballot access as an alternative for those who cannot meet state unequal

ballot access law requirements, including but not limited to third parties and independent

candidates, is not equal access to actual ballot representation. No write-in candidate has ever won

a Presidential election and in 2016 all write-in candidates received less than 1% of the popular

vote.

79.     Write-in access does not work because most people have trouble remembering the names

of other people. Although seeing a candidate's name on a ballot triggers their memory, in the

case of a write-in candidate, not only does the person have to remember the candidate's name,

but also he or she must remember how to *spell* that name correctly and in a way that is

acceptable for the Republicans and Democrats reviewing the election. This is even more difficult

because write-in candidates are not well-supported by corporations, wealthy businessmen, and

lobbyists, and have much smaller budgets than nominees running for Republican or Democrat

candidacy and therefore cannot afford as many advertisements or promotions to put their name in

front of the people. The voter's penmanship also must be deemed legible by the Republicans and

Democrats reviewing the election.

80.     Further, Republicans and Democrats are the ones who determine if the write-in vote

should count. For example, in 2002 in Mount Airy, Maryland, election officials nominated by the

incumbent Mayor disqualified 259 write-in ballots for his opponent James S. Holt because they

were written as "Holt," "Mr. Holt," and "Holt write-in," which were not on the agreed upon list

containing only 6 variants of Holt's name. In that election, voters were refused help by pole

workers when they asked how to write Holt's name on the ballot.[4] These pre-determined lists of

acceptable votes are common and used to exclude votes for write-in candidates.

81.     Many states, including Defendants' states of California, Florida, Georgia, Illinois,

Maryland, Massachusetts, Missouri, New York, North Carolina, Oklahoma, Oregon,

Pennsylvania, Texas, and Indiana where Plaintiff resides, prohibit apparel, buttons, stickers,

campaign materials, and literature inside polling places. This makes it even more difficult for

---

[4] https://www.washingtonpost.com/archive/local/2002/07/31/write-in-mayoral-bid-wins-in-md-court/2f353b51-45d1-43a8-b4c2-7e602dfefb5b/

voters to vote for write-in candidates because the voter cannot carry these materials with him/her to help him/her remember how to spell the candidate's name.

82.    There is a vast difference between campaigning for a candidate, where you distribute buttons and political flyers to others or attempt to solicit their votes using those materials and carrying one of those flyers or wearing one of those buttons (which you cannot lose or accidentally set down somewhere) into a voting place to ensure you know how to spell that candidate's name and are voting for the candidate of your choice in that position.

83.    There is a vast difference between a flyer or button that contains the name of a candidate and the position for which s/he is running and a flyer or button stating people should "Vote Republican." Reinoehl does not advocate and to the best of her knowledge has never advocated voting for a candidate simply because they belong to a certain political party.

84.    Polling places do not post a list of acceptable write-in candidate names so voters can see how to spell the names they are writing in and see if the candidate for whom they wish to vote is an acceptable write-in candidate in their state.

85.    The difference between ballot access and write-in status can be seen in the results from the 2020 election in Indiana (where 4,500 signatures are required for Democrats and Republicans to get on the ballot but about 45,000 signatures are required for other parties and independents) and in Wisconsin (which requires only 2,000 signatures to obtain ballot access for the presidential election). Indiana has about 4.8 million registered voters whereas Wisconsin has about 3.5 million registered voters. Solidarity Party candidate Brian T. Carroll made it on the ballot in Wisconsin and received 5,295 votes. However, as a write-in candidate in Indiana, he received only 893 votes despite Indiana's larger voter population.

86.    Further evidence of the importance of ballot access can be found in the 1992 campaign of

Ross Perot who managed to obtain ballot access in all 50 states. As an independent who was on the ballot, he received almost 20 million votes—about 19% of those who voted. However, in exit polls, an additional 35% stated they would have voted for him if they knew he had a chance to win. Perot earned votes equally from Democrats and Republicans.

87.     By 1996, states had made worse ballot access laws and Ross Perot was no longer able to make it on the ballot in all the states. He still managed to receive 8% of the vote, but as with the Indiana/Wisconsin example above, not having ballot access reduced his ability to gain votes.

88.     In the 2020 election, if the Solidarity Party had won every one of the eight states in which it was allowed equal ballot access, it could have only accumulated 66 electoral votes—far less than the required 270 to win the Presidential election. As seen in the 1992 exit polls, many voters will not vote for an independent or third party candidate that truly represents their views and values because it is impossible for that candidate to win.

89.     Currently, the only way a citizen's vote counts and can affect any Federal election is if he or she votes for a Republican or Democrat. That is not a representative government as required by the U.S. Constitution. Both Republicans and Democrats have proven through the laws they create that the only thing they represent is lobbying groups and businesses.

90.     For example, when N-95 mask making companies, Honeywell and 3M, spent a few million dollars lobbying Democrats and Republicans in 2021. Then in 2022, the government gave away 400 million N-95 masks produced by and bought by the government from those companies, but "free" to the public. Right before making this purchase, the government ran a quick marketing campaign promoting N-95s mask over cloth and "non-medical" masks. 3M sells N-95 masks at $0.71-$3.40 per mask. Although the companies made a good return on their lobbying investment, the public was not interested in these masks and pharmacies held them on

their shelves for months until they finally set them out by the boxful for a few consumers to horde or resell online.

91.     Without equal ballot access, those who vote for third parties and independent candidates cannot be heard.

92.     Many voters choose not to vote for third party and independent candidates they would support simply because of unequal ballot access laws that discriminately prevent these parties from being elected to federal offices and discriminately prevent these parties from forming a majority in Congress and the Senate—where they could enact true change.

93.     According to a Gallup poll conducted in June of 2022, only 27% of the respondents considered themselves Republican and another 27% considered themselves Democrats. Independents are by far the majority of voters at 43%, but they are forced to support either Republicans or Democrats in National Elections or have their vote go unheard because of unequal ballot access.[5]

94.     It has been argued a state has an interest in "ensuring that candidates have a significant modicum of support among the electorate before placing them on the ballot," but this interest is true of members of the Republican and Democrat parties as well as for other parties and independent candidates. When more people consider themselves independent than a member of these two parties, it is time for the parties to be subject to the same voting laws that third parties and independents are subject to following.

95.     Basing whether or not a candidate has a "modicum of support" on previous elections, as many states do, is faulty reasoning. Most states look at how many people voted in total or how well a political party did in a specific election, such as for Secretary of State or Governor. However, ballot access for these positions is also drastically unequal.

---

[5] https://news.gallup.com/poll/15370/party-affiliation.aspx

Page **20** of **33**

96.     Further, obtaining ballot access for these positions also requires an unequal number of signatures, among other things—with Republicans and Democrats having to collect few signatures and third parties or independents having to collect many signatures and overcome other bureaucratic obstacles. Again, without equal ballot access for these positions, one method used to determine whether or not a party has a "modicum of support" is in favor of Republicans and Democrats.

97.     The "party" a person votes for in a specific race has nothing to do with whether or not that voter supports the party in general.

98.     By the laws of Illinois, for example, a recognized political party must receive at least 5% of the vote for **governor** in a previous election to maintain political party status.

99.     Reinoehl voted for the Libertarian, Donald G. Rainwater II, for governor of Indiana in the 2020 election. Aside from the Republican and Democratic candidates, there were no other options, including write-in options, that she was aware of on the ballot. Her vote for governor had no effect or influence on her vote for other elective positions or candidates.[6]

100.    Even if Reinoehl did not show her support by voting for a Green Party or Solidarity Party candidate in the 2020 election, that does not mean one of those candidates would not have her support in the 2024 election. Nor does her vote for a Libertarian in 2020 have any bearing on whom she will vote for in 2024. A similarly situated person in Illinois is forced into choosing a party and not a candidate in order to maintain that party's ballot access.

101.    Political party affiliation is not representative government for the majority of people in America, who are independents.

102.    Simply being affiliated with a party does not signify a person supports that party's

---

[6] Indiana bases its "recognized" party status on the Secretary of State election. However, Reinoehl cannot remember the past names of any candidates she voted for as Secretary of State.

candidate—if it did all primaries and caucuses for the party would be unanimous.

103.    For example, in the 2016 election, 12% of the Democrats who voted for Bernie Sanders in the Primaries then voted for Donald Trump in the Presidential election—not the Democratic nominee Hillary Clinton.[7]

104.    In the fewer than 12 states that actually counted his write-in votes—Bernie Sanders was written-in as Presidential choice by more than 100,000 voters—with many of those who wrote-in his name being registered Democrats.[8] Had the Democrats been required to gather the same number of signatures supporting Hillary Clinton as what the third parties and independents had to gather in 2016 in the states from where Defendants served or are serving, she would have only been on the ballot in some of those states as a write-in candidate.

105.    As a further example that party affiliation has nothing to do with candidate preference, in 1952, when Republican President Eisenhower was elected, 44% of the nation said they were Democrats, 33% said they were Republicans, and 21% said they were independent.

106.    Since ballot access and political rallies for third parties and the independents was restricted in the 1952 election, independents and unhappy registered Democrats and Republicans had little choice but to choose the Democratic or Republican offerings or abstain from voting.

107.    Former Presidents Nixon and Regan were also Republican presidents, who were elected when the majority of Americans identified as Democrats and many others identified as independents.[9]

108.    At this time, when the majority of Americans identify as independents and have expressed frustration with both the Republican and Democrat parties, who combined barely

---

[7]https://web.archive.org/web/20201003070629/https://www.washingtonpost.com/
[8] https://heavy.com/news/2016/11/how-many-write-in-votes-for-did-bernie-sanders-get-presidential-election-results-california-iowa-new-hampshire-pennsylvania-vermont-total/
[9] https://www.pewresearch.org/politics/interactives/party-id-trend/

make more registered voters that independents as a whole, it is time for the Court to allow independents to choose from the numerous other parties and from candidates unaffiliated with any party.

109.     The Court needs to force Democrat and Republican candidates to follow all the same rules and obtain the same signature numbers required by third party and independent candidates or become write-in candidates if they fail to meet those requirements.

110.     Equal ballot access is the only way independent voters can affect election outcomes and elect candidates whose views they most support and who are most likely to represent them.

111.     Equal ballot access gives voters confidence not only in the voting system but also in their ability to vote for third party candidates that have a chance to win elections.

112.     If all voters must write in the names of their candidates—even those of Republicans and Democrats—then either ballot access laws will change or voters themselves will become more aware of the write-in candidates so they can correctly spell candidate names and identify the position for which they are running (i.e. put the candidate's name on the correct write-in blank).

113.     Writing the name of a Republican or Democrat on the ballot will also make voters more aware of write-in candidates as a whole and how to use that process.

114.     All Federal Elections need to have equal ballot access.

115.     If, for example, third parties and independent candidates must get 5% of the voting population to sign a petition showing they have support for their candidates in that community in order to have ballot access, there is no reason Republicans and Democrats cannot also find 5% of the voting population of that district to support each of their candidates before allowing them on the ballot. Republicans and Democrats cannot be exempt from these laws.

116.     Each state can determine its own Federal Election ballot access laws, but those laws

cannot differ depending on whether the candidate is the member of a "recognized party" (i.e.
Republican or Democrat) or not. The U.S. Constitution explicitly states in Article 1 that
"Congress may at any time…make or alter" State made Election Regulations. Congress did so
with the 14th Amendment.

117.    By making laws that unequally make it easier for Republicans and Democrats to place
their elected candidate on the ballot, these states are not allowing the people to equally choose
from all the candidates available to them and are not even notifying voters of all the candidates
for whom they may vote in violation of the First Amendment.

118.    Although a few states have equal or mostly equal ballot access for all Federal Election
Candidates, the states where Defendants serve or have served do not. Combined, the states that
employ the Defendants in this lawsuit make up 341 electoral votes for the 2024 election, which
creates an insurmountable block that prevents any third party or independent from winning the
Presidential Election. Until there is equal ballot access in all states and until Congress can once
again be populated with third parties and independents, people will continue to vote for only
Republicans and Democrats because they can win a general election.

119.    Republicans and Democrats actively use the Courts and Court resources to eliminate
competition in states with unequal ballot access laws, as Democrats did successfully in the 2020
election in Michigan and Pennsylvania. Not only does this prevent third parties and independents
from ever winning a presidential election or achieving a majority in the House of Representatives
or the Senate, but in 2020 it allowed Democrats to win.

120.    Republicans and Democrats actively use unequal ballot access laws to support their
propaganda that a vote for anyone who is not a Republican or Democrat is a wasted vote. This is
only true because Republicans and Democrats prevent third parties and independents from

universal ballot access across the states and use their automatically granted ballot access to force their unpopular and non-representative choice on the people.

121.    Independent voters, such as Plaintiff, become discouraged with voting in general when the parties they wish to vote for are removed from the ballots in their states and in other states.

122.    States with unequal ballot access laws that make it easier for Republicans and Democrats to remove competitors are in direct violation of the U.S. Constitution, which requires the Federal Government and the Government of the States to be representative. Allowing all Republican and Democrat candidates on ballots—regardless of whether they are supported by the majority of the population or not—and restricting the ability of Americans to vote for third parties that represent them is in direct violation of the 1st and 14th Amendments.

123.    Republicans and Democrats create unnecessary Court battles that are costly to taxpayers as well as costly to the third parties and independents who must legally fight to remain on the ballot in states with unequal ballot access laws. Republicans and Democrats do this to maintain their monopolistic political power and to continue appeasing the corporations (making up about 5% of American businesses), and millionaires and billionaires (making up about 9% of the American population) whom they represent.

124.    The United States was the first modern democracy. There were no political parties at its beginning. Its Founding Fathers envisioned many candidates running for office—not two political parties strong-arming public views. The first Presidential Election, for example, had 12 contenders.

125.    Republicans and Democrats have shown they do not care for democracy or the election process. They polarize voters to the point they refuse to accept defeat, such as when Democrats

rioted after the 2016 election and Republicans rioted after the 2020 election.[10],[11] The losing sides in both elections challenged election validity and rocked voter confidence.[12],[13]

126.   In the U.S. Constitution, states are ordered to allow Reinoehl and others similarly situated to vote for a candidate they believe will represent their voter values and beliefs in office. By enforcing unequal ballot access laws that favor Republicans and Democrats, Defendants have torn down democracy and representative government and instead replaced it with an oligarchy where the same individuals are dictatorially elected to office term after term after term *ad infinitum*.

127.   Independents and third-party votes had been gaining popular votes until COVID-19 lock downs initiated by Republicans and Democrats in combination with unequal ballot access laws prevented third parties from gaining ballot access. For example, in 2012-1.85% of those who voted had voted for third parties (2,384,728 of 129,237,642 total votes); in 2016-6.04% of those who voted had voted for third parties (8,304,388 of 137,143,218 total votes); but in 2020 only 1.95% (3,078,684 of 158,590,894 total votes), of those who voted had voted for third parties despite discontent with both Republican and Democrat candidates and higher voter turnout. Third parties and independents were excluded from the ballots and therefore, many voters did not realize they had choices other than a Republican or Democrat.

128.   Even though third parties and independents have not won a Presidential election in the last 100 years, they do and can influence elections with equal ballot access. The electoral college ensures third parties and independents can have significant impact on elections if they win only a

---

[10] https://apnews.com/article/congress-confirm-joe-biden-78104aea082995bbd7412a6e6cd13818
[11] https://www.reuters.com/article/us-usa-trump-inauguration-protests/violence-flares-in-washington-during-trump-inauguration-idUSKBN1540J7
[12] https://www.yahoo.com/video/hillary-clinton-maintains-2016-election-160716779.html, https://www.washingtonpost.com/politics/hillary-clinton-trump-is-an-illegitimate-president/2019/09/26/29195d5a-e099-11e9-b199-f638bf2c340f_story.html,
[13] https://www.businessinsider.com/trump-campaign-lawsuits-election-results-2020-11

few of the larger states or several smaller states because third parties and independents can create situations such as those that existed in 1824, where Congress choses the election winner because a majority of electors is not won by any single candidate. When only two parties have complete ballot access, it is impossible for neither of those two parties to achieve a majority.

129.    Third parties and independents offer a more diverse representation of the population. For example, The Green Party has always run at least one woman in the Vice-President/President race and makes sure its candidates represent diverse ethnic backgrounds. Even the Libertarian Party has ran 4 women for Vice-President since its inception 1972—including the first woman to ever receive an electoral vote. Contrast that with the 3 women the Democratic Party has run and 1 woman the Republican party has run for the same offices since 1972.

## V.    CAUSES OF ACTION

130.    This lawsuit challenges the unequal ballot access laws created by the states and enforced by all the Defendants.

## COUNT I: VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

131.    All preceding paragraphs are incorporated herein.

132.    Defendants give preferential treatment to Republicans and Democrats by always allowing them access to pre-printed candidate names on ballots.

133.    Defendants' refusal to force Republicans and Democrats to follow the same ballot access rules as set out for third party and independent candidates constitutes disparate treatment.

134.    This disparate treatment imposes serious burdens on Reinoehl's (and others similarly situated) Constitutional Right to vote for a representational government and select through voting a candidate who will best represent her and her values and needs.

135.    This disparate treatment imposes serious burdens on Reinoehl's (and others similarly

Page **27** of **33**

situated) First Amendment rights of speech by prohibiting her from wearing buttons or carrying other items that display her favored write-in candidates names into a voting area so she can properly write-in their name on write-in ballots.

136.     This disparate treatment imposes serious burdens on Reinoehl's (and others similarly situated) First Amendment rights of association by prohibiting her from voting for candidates with whom she wishes to associate and forcing her to vote for candidates with whom she does not wish to associate even when other candidates with whom she wishes to vote for and associate with exist on ballots in other states.

137.     This disparate treatment imposes serious burdens on Reinoehl's (and others similarly situated) Fourteenth Amendment voting rights.

138.     Any legitimate interest the Defendants and their associated states may have in ensuring candidates that are pre-printed on the ballots have a "modicum of support" equally applies to ensuring Republican and Democrat candidates have that same "modicum of support."

139.     Any other legitimate interest Defendants and their associated states have in preventing third parties and independent candidates from having their names pre-printed on the ballots is slight in comparison to the burdens on Reinoehl's (and others similarly situated) rights of association, speech, voting rights, and rights to representation.

140.     Defendants' actions therefore violate the Equal Protection Clause of the Fourteenth Amendment.

## COUNT II: DECLARATORY JUDGEMENT

141.     All preceding paragraphs are incorporated herein.

142.     Plaintiff is an interested party seeking declaration of her rights under 28 U.S.C. §2201 because unequal ballot access has functioned to deprive Plaintiff of her fundamental rights and

caused injuries and damages.

143.    An actual controversy of judiciable nature has arisen and now exists between Reinoehl

and the Defendants concerning their respective rights and legal obligations under the

Constitution.

144.    There is no adequate remedy, other than that requested herein, by which this controversy

may be resolved.

145.    Reinoehl seeks a judicial declaration to resolve the controversy between the parties

regarding Defendants' obligations under the Constitution to provide a representative

government.

146.    A declaration is necessary and appropriate at this time in order that each of the parties

may know their respective rights, status, legal relations, and duties and act accordingly.

147.    The Court should make declarations about Defendants' obligations under the

Constitution, including but not limited to the following:

a.  Established Parties, such as the Republican and Democrat Party, cannot be
    exempted from ballot access laws that third parties and independent candidates
    are subject to in order to obtain ballot access

b.  Defendants must require the same number of signatures for Republicans and
    Democrats to obtain ballot access as they require third parties and independents to
    obtain.

c.  Defendants must not pre-print the names of Republican or Democratic candidates
    on election ballots if they fail to follow all the requirements for ballot access that
    third party and independent candidates must follow and must only allow
    Republican and Democratic candidates on the ballots as write-in parties if they do

not sufficiently meet all the requirements.

    d.   Defendants must count all write-in votes determined to be legally valid and report those results for each official write-in candidate with the results of candidates who achieved ballot access as well as post those results whenever and wherever they post the results of the candidates who obtained ballot access.

148.    Reinoehl is entitled to a declaratory judgment against Defendants.

149.    In addition to the declaratory judgments sought herein, Plaintiff seeks further necessary or proper prospective relief as justice may require.

## COUNT III: REQUEST FOR INJUNCTIVE RELIEF

150.    All preceding paragraphs are incorporated herein.

151.    Absent injunctive relief, Reinoehl others similarly situated will suffer irreparable harm in that they will never be represented by the elected government and their votes will continue to go uncounted. Specifically, Republicans and Democrats continue to receive ballot access when the majority of voters no longer support those political parties and when corporations and special interest groups give them money that most voters cannot afford in order to further the interest of those corporations and groups in ways that both harm voters and do not represent the voters. The government will continue to be not representative of its citizens as the U.S. Constitution requires but only representative of those persons and entities who can make large campaign donations.

152.    Legal remedies are inadequate to address the states' continuing violation of the U.S. Constitution.

153.    Reinoehl is likely to prevail on the merits because Defendants' conduct contravenes the U.S. Constitution, the 1st and 14th Amendments and it is in the public's interests to ensure protection of rights under the Equal Protection Clause of the United States Constitution.

154.    The balance of interests weighs strongly in favor of equal ballot access for all candidates.

Granting injunctive relief would cause no harm to the state, which would be required to do

nothing more than to fulfill its statutory duty by assessing all its candidates to ensure they meet

ballot access requirements and would further its alleged goal of ensuring **all** candidates have a

modicum of support before giving them ballot access.

155.    Reinoehl is entitled to injunctive relief.

## VI.    **PRAYER FOR RELIEF**

**WHEREFORE**, Reinoehl respectfully requests that this Court enter judgment against
Defendants jointly and severally as follows:

A. Declare that Defendants' actions as set forth herein were in violation of the U.S. Constitution
and deprived Plaintiff of her rights, immunities, and privileges afforded thereunder;

B. Declare that the U.S. Constitution preempts any state law, rule, regulation, or policy that state
officials rely on for exempting certain political parties from following signature and other
requirements that third parties and independents must follow in order to obtain ballot access;

C. Declare that allowing certain preferred political parties an exemption to state signature and
other ballot access requirements is a violation of the Equal Protection Clause of the United States
Constitution;

D. Permanently enjoin Defendants from allowing any political party to be pre-printed on the
ballot unless the candidate for that party has followed all the requirements state law requires for
third parties and/or independent candidates;

E. Permanently enjoin Defendants from limiting ballot access for some parties and independents
while unequally allowing major parties an exemption from those limits;

D. Award Plaintiff her actual costs, damages, expenses, and reparations incurred in pursuing this

Page **31** of 33

action as authorized by 42 U.S.C. § 1988 and other applicable provisions; and

E. Grant any and all other and further relief as the Court deems just and proper.


Respectfully submitted this 6th day of October, 2022,


**Jennifer Reinoehl**
Pro se Litigant


**Jennifer Reinoehl**
51860 Cheryl Dr.
Granger, IN, 46530
574-302-6088
E-Mail: commercialsonly@juno.com
Pro se Litigant

## **Verification.**

I, the undersigned, hereby swear or affirm, under penalties of perjury that the foregoing statements are true.

**Dated October 6, 2022**

Respectfully submitted,

**Jennifer Reinoehl,** Pro se Litigant
51860 Cheryl Dr.
Granger, IN, 46530
574-302-6088
E-Mail: commercialsonly@juno.com