# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| **JENNIFER J. REINOEHL** | ) | |
| PLAINTIFF | ) | Case No. 1:22-CV-1974 JRS-TAB |
| v. | ) | Hon. JAMES R. SWEENEY, II |
| **JOHN H. MERRILL, ET AL.** | ) | MAG. TIM A. BAKER |
| DEFENDANTS | ) | |

**FILED**
**12/08/2022**
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT TEXAS SECRETARY OF STATE JOHN SCOTT'S AND RUTH R. HUGHS MOTION TO DISMISS

## I.  Introduction

Plaintiff respectfully opposes the Defendant, Texas Secretary of State John Scott's (herein "SoS. Scott") and former Texas Secretary of State Ruth R. Hughs' (herein "Hughs") Motion to Dismiss. SoS. Scott and Hughs argue this Court lacks jurisdiction because Federal election results in Texas do not affect Reinoehl even though the leaders elected in those elections are leaders for Reinoehl and citizens other states outside of Texas. The Courts have addressed how Federal Election Ballot Access affect Reinoehl: "Restrictions upon the access of political parties to the ballot impinge upon the rights of individuals to associate for political purposes, as well as the rights of qualified voters to cast their votes effectively." *Munro v. Socialist Workers Party*, 479U.S.189,

1

193, 107S.Ct.533, 93L.Ed.2d 499(1986). "It is well-settled that '[t]he impact of candidate eligibility requirements on voters implicates basic constitutional rights' to associate politically with like-minded voters and to cast a meaningful vote." *Stone v. Bd. of Election Comm'rs for City of Chi.*, 750F.3d 678, 681(7th Cir.2014) (quoting *Anderson v. Celebrezze*, 460U.S.780, 786, 103 S.Ct.1564, 75 L.Ed.2d 547 (1983)); see also *Norman v. Cook Cty. Officers Electoral Bd.*, 502U.S. 279, 288, 112S.Ct.698, 116L.Ed.2d711(1992) (footnote omitted) ("The right [to create and develop new political parties] derives from the First and Fourteenth Amendments and advances the constitutional interest of like-minded voters to gather in pursuit of common political ends, thus enlarging the opportunities of all voters to express their own political preferences.), *Nader v. Keith*, 385F.3d729, 737(7th Cir. 2004).

SoS. Scott and Hughs argue that their actions were not "purposely directed any activities toward Indiana." (Motion p.4). However, their actions are purposefully directed at disenfranchising independent and third-party voters *in every state* including but not limited to Reinoehl. By giving Republicans and Democrats a free pass to be on the ballot despite their declining party numbers, they are allowing them to continue gathering votes from voters who do not have the time or ability to memorize third party/independent candidate names. Republicans and Democrats spend much time and money in Courts getting third parties/independents reduced to write-in status because removing third party/independent pre-printed names increases votes for them.

SoS. Scott and Hughs argue that making Reinoehl's votes meaningless by allowing Republicans and Democrats a free pass on the ballot without subjecting them to similar ballot access laws as independents and third parties is not an injury in fact, but it is. Reinoehl and other independent voters have been injured by SoS. Scott and Hughs' actions because they prevented

parties with whom she and other voters wish to associate from being represented on the ballot while always allowing candidates such as President Joe Biden and Former President Donald Trump, neither of whom she wishes to associate with, on the ballots regardless of whether or not they had a modicum of support.

Reinoehl is asking this Court to make Election Officials force Republicans and Democrats adhere to the same ballot access laws as third parties/independents. By doing so, the Court would simply be adhering to the precedent established in *Williams v. Rhodes*, 393U.S.23, 30, 89S.Ct.5, 21L.Ed.2d24(1968), which state all voters, regardless of party affiliation or not, have the right "to associate for the advancement of political beliefs and the right of qualified voters to cast their votes effectively." SoS. Scott and Hughs argue and Courts have upheld that it is in the state's interest to determine if candidates have a modicum of support before being placed on a ballot—therefore, SoS. Scott and Hughs should not have a problem subjecting Republicans or Democrats to the same laws and requiring them to have only write-in status if they cannot get enough signatures for their specific candidate. Reinoehl is not seeking to overturn third party/independent requirements. She is seeking to have the Republican and Democrat parties also subject to those requirements— especially in light of their parties' declining memberships. Due to the rapidly changing political climate, equal ballot access can only be satisfied by subjecting all parties, including "established" political parties like Democrats and Republicans, to the same signature requirements.

## II.  Facts

> "In Texas, to obtain ballot access under Texas Election Code Section 181, Republicans need only 4,500 and Democrats need only about 5,000 signatures when running to be on the Federal election ballot. In contrast, third parties/independents need 90,000 signatures to be on the Federal election ballot in addition to numerous other differing bureaucratic requirements." (Original Complaint, herein "O.C." ¶63).

Texas election laws have disparate treatment between the "established" Democrat/ Republican candidates and third-party/ independent candidates. Texas has long upheld it needed this treatment so it could determine that third-parties and independents have a "modicum of support" before being printed on the ballot. Despite declining numbers of Republicans and Democrats and increasing numbers of third-party members and independents, SoS. Scott and Hughs did not require Democrats or Republicans to obtain signatures establishing that their Federal candidates had a modicum of support within the state in the 2016 or 2020 election. (O.C. ¶102-108).

Voters who wished to vote for Democrat or Republican candidates simply had to mark which candidate they preferred. In contrast, those wishing to vote for third parties or independent candidates, such as Reinoehl, had to learn how to spell their candidate's name properly and hope that the way they wrote the name was both legible and accepted—but states never published the list of acceptable spellings/name formations where voters could see them—even outside voting places. (O.C. ¶79, 84). Independent voters cannot carry buttons or campaign materials into voting areas in Texas to copy accurate spelling of their preferred candidates' names. (O.C. ¶81).

Citizens vote for candidates that are printed on the ballot in greater proportion than they vote for a third-party or independents because writing in a name is more difficult than checking a box. (O.C. ¶79). It is difficult for voters to learn which write-in candidates are accepted in their states. (O.C. ¶84). Many voters also do not vote for third-party or independents because they realize that without equal ballot access, these candidates will not get enough votes to win the election and therefore any vote for these candidates is not meaningful.

Reinoehl has been politically active since before she turned 18. (O.C. ¶35). She has long advocated on social media for voting for candidates and not parties. She has had to sneak slips of

4

paper with candidates' names discretely into voting areas so she can see how to spell the names of the candidates for whom she votes. She is constantly worried that she will be caught and prohibited from voting.

Others have accused her of "wasting" her vote because without ballot access statistically third parties/independents do not get elected. (O.C. ¶120). Reinoehl discovered in 2020 that not only was ballot access unequally determined in her state and others, but also that Republicans and Democrats regularly use the Court system to remove third-parties names from the ballots to gain votes for their own candidates. (O.C. ¶119). In all cases, these third-party candidates still maintained write-in status after the court case. Both Democrats and Republicans know that those who would have voted for the third-party candidate would no longer do so if s/he could not see the candidate's name on the ballot.

Third-parties, on the other hand, cannot remove Democrats or Republicans from the ballot because they fail to follow any of the unequal steps in obtaining ballot access since states like Texas have given Republicans and Democrats a free pass with few steps to follow each year beyond filing their candidates' names. (O.C. ¶122). These states, including but not limited to Texas, continue to claim they must treat third-parties and independents unequally to determine whether or not the third-parties and independents have a "modicum of support." They ignore that the number of people who support Democrats and Republicans is in decline and that there are often major splits within the Democrat and Republican parties concerning candidates, such as in the 2016 election. (O.C. ¶93, 103-108).

### III.  ARGUMENT

This Court has personal jurisdiction over SoS. Scott and Hughs because the Texas election laws they enforce and have enforced in Federal elections harm Reinoehl in her home state of

Indiana. They harm Reinoehl and other independent voters across the United States in their home states by making it easier for Texans to vote for Republicans and Democrats in Federal elections that affect the entire country—whether or not their candidates have a modicum of support. Further, Reinoehl is not seeking to overturn Supreme Court decisions concerning signature requirements, but rather to enforce those decisions against Republicans and Democrats.

Reinoehl has standing to bring this lawsuit because as an independent voter, she was harmed by Texas' election laws since third parties and candidates for whom she wished to vote were disproportionately only available as write-in candidates on Texas' ballots. Unlike other lawsuits cited by SoS. Scott and Hughs, which solely sought to overturn third party/independent signature requirements, this lawsuit seeks to require Republican and Democrat candidates to also follow those laws since declining party affiliation numbers and internal party conflicts mean they can no longer guarantee they have a "modicum of support" for their candidates. Republican and Democrat candidates for Federal elections should have an equal opportunity to appear only as write-in candidates on Texas election ballots.

**A. The Court Has Personal Jurisdiction Over Defendants**

SoS. Scott and Hughs state that this Court does not have personal jurisdiction over them. They admit that Reinoehl "baldly asserts the presence of Defendants Connie Lawson and Holli Sullivan in Indiana as the sole basis for exercise of personal jurisdiction over *all* Defendants." (Motion to Dismiss p.3, emphasis in original) 28U.S. Code §1367(a) states, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." All the claims in this lawsuit arise from Defendants' violations

of the First and Fourteenth Amendments of the United States Constitution by continuing to allow Democrat and Republican candidates to be pre-printed on their states' Federal election ballots even when those candidates could not have obtained the showing of a modicum of support required of third parties/independents. Two of the Defendants both reside in, do business in, and committed their acts in Indiana. The rest of the Defendants committed acts in their home states that deprived Indiana citizens of their rights in Indiana.

    The Supreme Court stated,

> "Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute, see *McGee v. International Life Ins. Co.*, 355U.S.220, 355 U.S.223(1957); the plaintiff's interest in obtaining convenient and effective relief, see *Kulko v. California Superior Court*, supra at 436U.S.92, at least when that interest is not adequately protected by the plaintiff's power to choose the forum, cf. *Shaffer v. Heitner*, 433U.S.186, 433U.S.211, n.37(1977); the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies, see *Kulko v. California Superior Court*, supra at 436U.S.93, 436U.S.98." *World-Wide Volkswagen Corp. v. Woodson*, 444U.S.286(1980)

    Unlike the cited *Walden v. Fiore* 571U.S.277, 134S.Ct.1115, 188L.Ed.2d12(2014), where Plaintiffs were injured in a state other than their state of residency, Plaintiff is an Indiana resident and the actions of SoS. Scott and Hughs injured her in Indiana by making her votes unmeaningful. See *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592U.S.___(2021).

    This is not a case filed under state laws—nor is it seeking to change established state laws in regards to third parties/independents. It simply seeks to have those laws applied universally. This case invokes a federal question concerning unequal ballot access laws in general. Reinoehl seeks the freedom to cast a meaningful vote for candidates with whom she wishes to associate and

cannot do so unless all candidates, including Republicans and Democrats, equally earn ballot access.

Federal ballot access does not solely affect the citizens of the state in which the unequal laws are created and enforced. When a state determines who will and will not be on its ballots, it affects United States leadership as a whole and every citizen of the United States. Further, the Texas Secretary of State (currently SoS. Scott and formerly Hughs) operates a website in which election materials targeting all candidates for Federal elections, including but not limited to presidential candidates from the state of Indiana, are found. S/he also accepts and processes forms from presidential candidates who live in Indiana. Therefore, s/he has direct contacts with the state of Indiana and Indiana citizens concerning Federal elections.

In this modern age, where hearings and depositions can be conducted via Zoom from a litigant's home state and where documents are filed electronically with the court, Defendants need not be burdened with the past inconveniences caused by litigating in distant forums. *McGee v. International Life Ins. Co.*, supra at 355U.S.222-223.

**B. Exercising Personal Jurisdiction Over Texas Defendants Does Not Offend Traditional Notions of Fair Play.**

SoS. Scott and Hughs argue that Indiana has no interest in determining if Democrat and Republican candidates should be subject to the same ballot access laws as third parties/independents. However, this is a question that Reinoehl asks the Court to decide for Indiana as well as for Texas. Under the United States Constitution, all Texas' elections laws must be upheld equally. Here, SoS. Scott and Hughs failed to require Republicans and Democrats show they have a modicum of support for their candidates in Texas, while forcing third parties/independents to show the same.

SoS. Scott and Hughs argue Reinoehl does not have a legitimate interest in obtaining effective relief, but she has been writing in the names of her preferred candidates for decades. Seeing all candidates regulated to write-in status if they do not achieve the modicum of support is a legitimate interest.

Ironically, SoS. Scott and Hughs, who are from Texas, shun a "quasi-nationwide injunction" and cite Samuel L. Bray. Texas federal district courts have issued the most nationwide injunctions against, for example, the Obama administration.[1] Here, as Reinoehl stated in her Complaint, she is not seeking a nationwide injunction but merely an injunction against Defendants because (1) a few states already have equal ballot access laws; (2) of those who do not have equal ballot access laws, she believes the Defendants' states have the most disparate differences in ballot access laws; (3) the Defendants' states alone make up the majority of the electoral college votes and allow for the election of a majority to the House of Representatives. (O.C. ¶118).

SoS. Scott and Hughs fail to address two of the five factors they allege are relevant to the analysis. First, they do not claim adjudicating this suit in Indiana will burden them—nor do they propose an alternate venue. Reinoehl does not believe adjudicating the lawsuit in Indiana will cause any defendant undue burden. SoS. Scott and Hughs also fail to acknowledge that all Defendants' states have a shared interest in determining if Republican and Democrat candidates follow the same election rules as third parties/independents.

**C. Reinoehl Alleged an Injury in Fact**

Reinoehl's injury can be redressed by a favorable decision from this Court because if Republicans and Democrats are subject to the same signature requirements as third parties/independents, Reinoehl and other voters not affiliated with a party will be able to vote,

---

[1] https://www.dailykos.com/stories/2016/10/27/1587515/-How-conservative-federal-judges-in-Texas-are-putting-a-stranglehold-on-President-Obama-s-policies

knowing that even though their preferred candidate may not make it on the ballot and may be resigned to write-in status, Republicans and Democrats will also have the same chance of being resigned to write-in status. Independents' votes will be meaningful as they will go to a candidate with an equal chance of being elected.

**D. Reinoehl Has Standing.**

As a voter who is unaffiliated with any political party, Reinoehl has standing to bring this lawsuit because she, herself, is affected by laws that prevent those for whom she wishes to vote from having their names printed on the ballots while allowing Republicans and Democrats to always have candidate names printed on the ballots.

However, Reinoehl's claim does not affect every voter. Here, Reinoehl is not, as SoS. Scott and Hughs state, making a claim based on harms incurred by every citizen in the United States. As the laws are currently interpreted, neither Republicans and Democrats nor the candidates placed on the ballots by them are harmed—in fact those voters and candidates are aided because the voters do not need to learn the names of the candidates for whom they are voting, but simply mark next to the candidates whose names are both pre-printed on the ballot and are labeled with the terms "Republican" and "Democrat." Only third party/independent voters, including but not limited to Reinoehl, are directly harmed by not seeing the names of the candidates they wish to support on the ballot and having to guess at how the names are to be properly written on the ballot and learn how to spell the names correctly. If independent voters and those associated with third parties cannot remember the spelling of their candidate's name, they are further harmed by being forced to either not vote or to choose a Republican or Democrat. Since neither Republicans nor Democrats have to follow third party/independent signature requirements in any of the states from which any Defendant resides and works, these laws are not "generally applicable."

**E. Reinoehl's Injury Is Traceable to SoS. Scott and Hughs**

SoS. Scott is the Secretary of State for Texas and as such is Texas's chief election official. (O.C. ¶28). Hughs was the Secretary of State for Texas and as such was Texas's chief election official. (O.C. ¶27). It is and was their job to see all Texas's elections laws are upheld equally. In this case, they have failed to require Republican and Democrat candidates show they have a modicum of support in their state, while forcing third parties/independents to show the same.

Reinoehl has been injured by not seeing her candidates on the ballot. She has been injured by constantly seeing Republican and Democrat candidates on the ballot and by their ability to avoid election requirements that they take third parties/independents to court for not following. Reinoehl does not ask for all candidate names to be on the ballot so voters can choose between them easily. Nor does she ask this Court to elect her chosen candidates. She only wants election laws enforces equally so Democrats and Republicans also have the same chances as third parties/independents of not being on the ballot.

States have constantly argued that write-in candidates are a fair alternative to those who are pre-printed. Reinoehl disagrees with this based on the available statistics and for the reasons she cited in the Complaint, but if the states truly believe there is no difference, they should not have a problem forcing the declining Republican and Democrat parties to follow the same ballot access laws as third parties/independents. (O.C. ¶85-87).

Reinoehl is burdened by not being able to simply select her chosen candidate. Regardless of whether Reinoehl's candidate wins or not, Republicans and Democrats should be similarly burdened by having to write-in the names of their candidates if they cannot obtain a modicum of support through equal signature requirements. Unlike the cited *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26 (1976), where hospitals and not state officials were responsible for providing relief and Plaintiffs were not directly injured, Reinoehl has been directly injured, the

11

relief she seeks is relief this Court can provide, and SoS. Scott and Hughs are and were directly responsible for administering that relief in Texas.

**F. SoS. Scott Is Not Protected By Sovereign or Qualified Immunity.**

SoS. Scott claims Eleventh Amendment immunity and first alleges Reinoehl failed to "[properly invoke]" *Ex parte Young*. Reinoehl was unaware that she needed to "[properly] invoke" Court precedent in her Complaint, but the Complaint in *Ex parte Young* did not invoke itself. SoS. Scott goes on to allege *Ex parte Young* does not apply here, but the Supreme Court held that the Eleventh Amendment does not prevent cases against state officials to enjoin enforcement of an allegedly unconstitutional statute, provided that "such officer [has] some connection with the enforcement of the act." in *Ex parte Young*, 209U.S. at157, 28S.Ct.441. Further, Reinoehl is only seeking prospective relief.

Where other Circuits have accepted that the Chief Election Official (SoS. Scott in Texas) is responsible for overseeing elections and falls under *Ex Parte Young's* "some connection" (See *Missouri Prot.& Advoc. Servs., Inc. v. Carnahan,* 499F.3d803 (8th Cir.2007); *Ellis v. University of Kansas Medical Center*, 163F.3d1186, 1196(10th Cir.1998)), the 5th Circuit requires that the specific duty in question is written into Texas Law—a precedent currently challenged in the Supreme Court. *Weisfeld v. Scott*, No. 22-149. In this instant case, there is no need to wait for the Supreme Court ruling because under Texas Election Code (see for example §181.0041,181.005, 181.006,181.007,181.0311), the Secretary of State is directly responsible for accepting all the forms required by candidates for appearance on the Federal Ballot, for determining which names will be pre-printed on the ballot, and for notifying others in the state as to who is to be pre-printed on the ballot. By the 5th Circuits own caselaw precedent, "the plaintiff at least must show the defendant has "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Morris v. Livingston*, 739F.3d740, 746(5thCir.2014) (quotation marks

omitted). That means the official must be "statutorily tasked with enforcing the challenged law." *In re Abbott*, 956F.3d at709. Enforcement typically means "compulsion or constraint." *K.P.*,627 F.3d at124. A "scintilla of 'enforcement' by the relevant state official with respect to the challenged law" will do. *City of Austin*, 943F.3d at1002." *Tex. Democratic Party v. Abbott*, 978F.3d168, 179 (5$^{th}$Cir.2020).

**G. Reinoehl States a Claim Upon Which Relief Can Be Granted**

SoS. Scott and Hughs allege that "winning the nomination to be candidate…via a primary election is itself an indication that a given candidate has the requisite 'modicum of support.'" The problem with their reasoning is twofold.

First, the Libertarian Party, the Green Party, the Solidarity Party, the Constitution Party, the Alliance Party, the Unity Party, and the Reform Party, for example, all hold conventions and primaries but their candidates have been subjected to obtaining the signature requirements of third parties/independents in Texas. If winning a party's primary shows a modicum of support these parties should automatically get their candidates on the ballots and they do not.

Second, Republicans and Democrats, specifically, use superdelegates in their primary elections who do not have to vote according to the way voters in the primaries voted. There are enough superdelegates to raise a candidate who did not receive the majority vote to the level where s/he wins the nomination. For example, in the 2016 election, Bernie Sanders received the most votes in the primary from individual voters, but at the convention, the superdelegates made sure Hillary Clinton won the party nomination for president. That is neither a representative nor democratic means of electing a candidate.

SoS. Scott and Hughs argue that Texas has a right to ensure third party/independent candidates receive a modicum of support, but if this is true of third parties/independents, it should also be true of Republican and Democrat candidates. Reinoehl is not asking the Court to overturn

13

the signature requirements for third parties/independents—something that has been the sole question in all prior ballot access cases. In this case, Reinoehl is challenging Texas' continued practice of letting "established political parties" escape signature requirements and all the other requirements third parties/independents must perform to get on the ballot in light of the fact that the number of registered Republicans and Democrats is declining and independents are the largest group of American voters.

Today, Democrats and Republicans no longer have the numbers willing to join their parties. In the past 6 decades, numbers of registered Republicans and Democrats have fallen by about half. This lawsuit is not seeking to overturn Texas's signature requirements or other requirements for third parties/independents. Reinoehl wants the declining Republican and Democrat parties to be subject to the same requirements as third parties/independents since most voters no longer prefer to be associated with them.

## CONCLUSION

For the reasons set forth above, SoS. Scott and Hughs 's Motion to Dismiss should be summarily denied.


Respectfully submitted,

*[signature]*

**Jennifer Reinoehl,** Pro Se Plaintiff 12/08/22
51860 Cheryl Dr.
Granger, IN, 46530
574-302-6088
E-Mail: commercialsonly@juno.com

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that the foregoing was filed by e-mail with the Clerk of the Court December 8, 2022, and it was thereon entered into the ECF system and distributed to all Defendants Attorneys.

    Respectfully submitted,

**Jennifer Reinoehl,** Pro Se Litigant      12/08/22
51860 Cheryl Dr, Granger, IN, 46530
Phone: 574-302-6088;
E-mail: commercialsonly@juno.com

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| **JENNIFER J. REINOEHL** | ) | |
| PLAINTIFF | ) | **Case No. 1:22-CV-1974 JRS-TAB** |
| v. | ) | **Hon. JAMES R. SWEENEY, II** |
| **JOHN H. MERRILL, ET AL.** | ) | **MAG. TIM A. BAKER** |
| DEFENDANTS | ) | |

## APPELLANT'S AFFIDAVIT ACCOMPANYING MOTION FOR LEAVE TO LATE FILE APPELLANT'S BRIEF

1. My name is Jennifer Reinoehl. I am 46 years old. I work as a freelance writer, and I currently reside at 51860 Cheryl Dr., Granger, IN 46530.

I, Jennifer Reinoehl, swear or affirm the facts contained in this affidavit are within my own knowledge and are true and correct:

2. I do not have access to the ECF system.

3. I received Secretary of State John Scott's and Ruth R. Hughs' Motion to Dismiss November 22, 2022, by certified mail.

4. I could not figure out how to combine my Opposition to Secretary of State John Scott and Ruth R. Hughs' Motion to Dismiss with any of my other Oppositions.

5. I am sending my Memorandum of Law in Opposition to the clerk by e-mail to be filed December 8, 2022.

6. I have been sick.

I declare that to the best of my knowledge and belief, the information herein is true, correct, and complete.

Executed this ___8TH___ day of __December__, __2022__

_____
Jennifer Reinoehl

## JURAT/AFFIDAVIT CERTIFICATE

STATE OF INDIANA
COUNTY OF ST. JOSEPH
On this ___8th___ day of __December__, 2022, before me, the undersigned notary public, personally appeared Jennifer Reinoehl, proved to me through satisfactory evidence of identification, which was __Indiana Drivers License__, to be the person whose name is signed on the preceding or attached document who swore or affirmed to me that the contents of the document are truthful and accurate to the best of her knowledge and belief.

_____
Signature of Notary Public

__May 18th, 2028__
Commission Expiration Date of Notary Public



MARIANA REYES
Commission Number 0726883
My Commission Expires
May 18, 2028

Page 2 of 2