UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS

| | | |
|---|---|---|
| JENNIFER REINOEHL, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 1:22-CV-01974-JRS-TAB |
| | § | |
| JOHN H. MERRILL, *et al.*, | § | |
| *Defendants.* | § | |

### BRIEF IN SUPPORT OF DEFENDANTS JOHN SCOTT AND RUTH R. HUGHS'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN COWLES**
Deputy Attorney General for Civil Litigation

**CHRISTOPHER D. HILTON**
Chief, General Litigation Division

**PIERCE SMITH**
Assistant Attorney General
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667
PIERCE.SMITH@OAG.TEXAS.GOV

**ATTORNEYS FOR DEFENDANTS
TEXAS SECRETARY OF STATE JOHN SCOTT
AND FORMER TEXAS SECRETARY OF STATE
RUTH R. HUGHS**

# *Table of Contents*

I.    SUMMARY OF PLAINTIFF'S ALLEGATIONS AND TEXAS DEFENDANTS' ARGUMENTS ........ 3

II.    MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION.......................................... 5

    A.    STANDARD OF REVIEW ................................................................................. 5

    B.    ARGUMENT & AUTHORITIES ........................................................................ 6

        1.    **This Court lacks Personal Jurisdiction over Texas Defendants because they have not purposefully directed any activities toward Indiana.** ................................................. 7

        2.    **Plaintiff has suffered no legally cognizable injury—much less one arising from Texas Defendants' non-existent forum contacts.** ............................................................ 8

        3.    **Exercising Personal Jurisdiction over Texas Defendants would offend traditional notions of fair play and substantial justice.** ........................................................... 9

III.    MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION .......................... 10

    A.    STANDARD OF REVIEW ............................................................................... 11

    B.    ARGUMENT & AUTHORITIES ...................................................................... 11

        1.    **Plaintiff's claims fail each prong of the constitutional Standing analysis.** ............... 11

        2.    **Sovereign Immunity bars Plaintiff's claims against Secretary Scott.** ..................... 15

IV.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ............................................... 16

    A.    STANDARD OF REVIEW ............................................................................... 17

    B.    ARGUMENT & AUTHORITIES ...................................................................... 17

        1.    **Texas ballot-access laws have a plainly legitimate sweep and Plaintiff's facial challenge must fail for this reason alone.** ................................................................ 17

        2.    **Texas ballot-access laws are reasonable means of pursuing Legitimate State Interests.** ............................................................................................................ 18

        3.    **Texas's important regulatory interests are sufficient to justify these reasonable, nondiscriminatory restrictions.** .......................................................................... 19

PRAYER ..................................................................................................................... 19

CERTIFICATE OF SERVICE ............................................................................................ 21

*Texas Defendants' Brief in Support of Motion to Dismiss FAC*

To the Honorable Judge Tim A. Baker:

Now Come Defendants Texas Secretary of State John Scott, in his official capacity, and Former Texas Secretary of State Ruth R. Hughs, in her sole individual capacity (collectively, "Texas Defendants"), who respectfully ask this Court to dismiss Plaintiff's claims against them for lack of personal jurisdiction, lack of subject-matter jurisdiction, and failure to state a claim.

## I.  Summary of Plaintiff's Allegations and Texas Defendants' Arguments

Ms. Reinoehl renews and embellishes her conclusory allegations and legal assertions in the First Amended Complaint ("FAC"). *See generally* Dkt. #53.1. But the bottom line remains the same: Ms. Reinoehl urges this Court to level the playing field between the major parties, minor parties, and independent candidates in the hope that this will cure the myriad alleged electoral infirmities that purportedly cause "[i]ndependent voters, such as Plaintiff, [to] become discouraged with voting in general." *Id.* ¶ 128. Ms. Reinoehl's theory hinges on the assumption that once her preferred equal-ballot-access regime is implemented "voters [will have] confidence…in their ability to vote for third party candidates that have a chance to win elections," and then—and only then—will Ms. Reinoehl's vote become meaningful. *Id.* ¶ 118; *see also id.* ¶ 90 ("[My] vote is meaningless unless other like-minded individuals are given the same choices.").

She seeks to impose her vision of "equal ballot access" on the nation by suing States, comprising "341 electoral votes for the 2024 election" (the "Defendant-States"), to remove this allegedly "insurmountable block that prevents any third party or independent from winning the Presidential Election." *Id.* ¶ 125. Ms. Reinoehl attempts to clothe her naked policy goals with a coat of conclusory constitutional assertions. *See, e.g., id.* ¶ 96 ("Currently, the only way a citizen's

vote counts and can affect any Federal election is if he or she votes for a Republican or Democrat. That is not a representative government as required by the U.S. Constitution."); *id.* ¶ 134 ("In the U.S. Constitution, *states are ordered to* allow Reinoehl and others similarly situated to vote for a candidate they believe will represent their voter values and beliefs in office.") (emphasis added).

Ms. Reinoehl sues Former Secretary Hughs in her individual capacity[1] and Secretary Scott in his official capacity. *Id.* ¶¶ 27-28. She brings this action under 42 U.S.C. § 1983 "to redress a deprivation of" First and Fourteenth Amendment rights. *Id.* ¶ 30. Ms. Reinoehl has embroiled Texas Defendants in this distant action on the supposition that "[s]tate ballot access laws applied to any Federal election affect[] every citizen in the United States and not just the residents of the state in which those laws were created." *Id.* ¶ 72. She further alleges that "Defendants have all harmed Reinoehl by rendering her vote meaningless and making it impossible for the candidates and parties with whom she wishes to associate from gaining a majority of the votes." *Id.* ¶ 154. She seeks declaratory and injunctive relief that amounts to little more than the Court's endorsement of her idiosyncratic constitutional theories. *See id.* p. 35 ¶¶ A-E. She further seeks "her actual costs, damages, expenses, and reparations incurred in pursuing this action as authorized by 42 U.S.C. § 1988 and other applicable provisions." *Id.* p. 35 2nd ¶ D.

This Court is not the proper forum for Ms. Reinoehl to air her generalized political grievances because: (1) it lacks personal jurisdiction over Texas Defendants, as they have not purposefully directed any activities toward the State of Indiana; (2) it lacks subject-matter jurisdiction to adjudicate Plaintiff's claims against Texas Defendants, as her generalized grievances

---

[1] Former Secretary Hughs resigned as Texas Secretary of State on May 31, 2021. Plaintiff offers no legal or factual basis—nor could she—for lodging her claims against Former Secretary Hughs (in any capacity) along with election officials from across the country.

are neither fairly traceable to Texas Defendants nor likely to be redressed by a favorable decision of this Court; and (3) Plaintiff fails to state a claim on which relief may be granted.

These personal-jurisdiction, subject-matter-jurisdiction, and claim-stating problems with the FAC all emanate from the fundamental problem with Ms. Reinoehl's lawsuit: She seeks judicial action to impose her policy goals on Defendant-States by challenging all applications of Defendant-States' ballot-access laws. She seeks this maximalist form of judicial relief, even though *no* application of Texas ballot-access laws has anything more than the most attenuated of indirect effects on Plaintiff's satisfaction with American democracy. Texas Defendants respectfully urge this Court to decline Plaintiff's invitation and to dismiss her action with prejudice.

## II.    MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

This Court should dismiss Plaintiff's claims against Texas Defendants because they have not purposefully directed any activities at the State of Indiana, Ms. Reinoehl's alleged injury does not arise out of Texas Defendants' non-existent forum-related activities, and exercising personal jurisdiction over Texas Defendants would not comport with traditional notions of fair play and substantial justice.

### A.  STANDARD OF REVIEW

"Once a defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff has the burden of establishing personal jurisdiction." *Rogers v. City of Hobart*, 996 F.3d 812, 818 (7th Cir. 2021) (citing *Curry v. Revolution Laboratories, LLC*, 949 F.3d 385, 392 (7th Cir. 2020)). Even where the district court rules on a 12(b)(2) motion without the benefit of an evidentiary hearing, the plaintiff still bears "the burden of making a prima facie case for personal jurisdiction." *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 620 (7th Cir. 2022).

## B. ARGUMENT & AUTHORITIES

Ms. Reinoehl has failed to make a prima facie case for personal jurisdiction because she baldly asserts the presence of Defendants Connie Lawson and Holli Sullivan in Indiana as the primary basis for the exercise of personal jurisdiction over *all* Defendants. Dkt. #53.1 ¶ 31. She attempts to buttress her original argument for personal jurisdiction with the conclusory assertion that "[a]ll Defendants have purposefully disenfranchised and harmed independent voters in Indiana, where Reinoehl resides, and those in all states by allowing Republicans and Democrats to be automatically on their ballots…" *Ibid.* Despite this latest conclusory legal assertion, Ms. Reinoehl still cannot make a prima facie showing of personal jurisdiction because Texas Defendants have no minimum contacts with Indiana, and exercising personal jurisdiction over them would be an affront to both due process and principles of horizontal federalism. *See, e.g., Curry*, 949 F.3d at 395 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)) (describing two key functions of the Due Process Clause's limits on personal jurisdiction as (1) ensuring States "do not reach out beyond the limits" of "coequal sovereigns in a federal system" and (2) protecting "defendant[s] against the burdens of litigating in a distant or inconvenient forum").

A case involving federal-question jurisdiction, such as this, is properly dismissed for lack of personal jurisdiction if neither federal law nor the law of the forum state authorizes service of process to the applicable defendant(s). *HANWJH*, 46 F.4th at 620. Plaintiff has not identified any federal service-of-process statute applicable to this case, thus the Court may exercise jurisdiction over Texas Defendants only if authorized by Indiana's long-arm statute and the United States Constitution. *Curry*, 949 F.3d at 393. Indiana's long-arm statute "extends to the limits of the

Constitution." *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006). Therefore, the dispositive inquiry is "whether 'the exercise of jurisdiction comports with the limits imposed by federal due process." *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)).

The Seventh Circuit's cases "have distilled three 'essential requirements'" for the exercise of personal jurisdiction over an out-of-state defendant. *Curry*, 949 F.3d at 398 (quoting *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019)). First, the defendant must have purposefully availed itself "of the privilege of conducting business in the forum state or purposefully directed its activities at the state." *Ibid.* (quoting *Hotai*, 938 F.3d at 878) (cleaned up). Second, "the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities." *Ibid.* (quoting *Hotai*, 938 F.3d at 878). Third, the exercise of personal jurisdiction "must comport with traditional notions of fair play and substantial justice." *Ibid.* (quoting *Hotai*, 938 F.3d at 878).

Plaintiff's case fails on each of these essential requirements.

**1.  This Court lacks Personal Jurisdiction over Texas Defendants because they have not purposefully directed any activities toward Indiana.**

A person may not be haled into courts located in another state "unless he has purposefully availed himself of the protection of the laws of that jurisdiction." *Rogers*, 996 F.3d at 819. The defendant's relationship to the forum state "must arise out of contacts that the defendant *himself* creates with the forum State and the relationship must be with the forum State itself and not merely with persons who reside there." *Id.* at 820 (quoting *Walden*, 571 U.S. at 284-85) (cleaned up) (emphasis in original).

Here, Plaintiff asserts that (1) the presence of other Defendants in Indiana and (2) all

Defendants' alleged purposeful disenfranchisement of independent voters in Indiana makes exercising personal jurisdiction over all Defendants proper. Dkt. #53.1 ¶ 31. Even accepting Plaintiff's theory that the cumulative effect of ballot-access laws around the nation somehow "disenfranchise[s] and harm[s] independent voters in Indiana," she has made no showing that Texas Defendants have "purposefully availed [themselves] of the protection of the laws of [Indiana]." *Rogers*, 996 F.3d at 819. And that is the relevant inquiry for the constitutional minimum-contacts analysis—not whether the cumulative effect of Texas Defendants' alleged conduct and the other Defendants' alleged conduct might have some marginal impact on Indiana voters' satisfaction with the slate of candidates on a given ballot. This attempt to exercise personal jurisdiction over Texas Defendants also runs headlong into the settled law that a "defendant will not be 'haled into a jurisdiction solely as a result of…the unilateral activity of another party or a third person.'" *Curry*, 949 F.3d at 396 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Quite simply, the presence of other Defendants in Indiana—and any cumulative effect that the Defendant-States' ballot-access laws may have on Ms. Reinoehl or other Indiana voters' satisfaction with any given slate of candidates—are no basis for exercising personal jurisdiction over Texas Defendants, and Plaintiff has failed to carry her burden of making a prima facie showing that Texas Defendants have purposefully availed themselves of the protection of Indiana's laws.

## 2. Plaintiff has suffered no legally cognizable injury—much less one arising from Texas Defendants' non-existent forum contacts.

As will be explained more fully in the discussion of the generalized-grievance bar to standing, *see* Section III.B.1.a, *infra*, Ms. Reinoehl has suffered no legally cognizable injury in relation to her claims. Even assuming that Plaintiff's alleged equal-ballot-access injury were a legal

injury—rather than a generalized political grievance—it certainly could not arise out of any contacts that Texas Defendants have with Indiana as (1) they have no such contacts relating to Plaintiff's claims and (2) Plaintiff challenges Texas Defendants' past, present, and future implementation of election laws within the territorial jurisdiction of Texas for the purpose of regulating only Texas elections. *See Rogers*, 996 F.3d at 820 ("These arguments suffer from a fundamental flaw. According to the allegations in this case, the defendants simply did not undertake any affirmative action in Illinois, or any action purposefully designed to have an effect within Illinois."); *accord In re Sheehan*, 48 F.4th 513, 526 (7th Cir. 2022) (holding that Illinois debtor's injury did not arise out of defendants' forum-related activities, where all acts to liquidate plaintiff's Irish collateral occurred in Ireland).

### 3. Exercising Personal Jurisdiction over Texas Defendants would offend traditional notions of fair play and substantial justice.

The Court need not evaluate the fair-play-and-substantial-justice requirement, in a case such as this, where defendants plainly lack minimum contacts with the forum state. *See, e.g., In re Sheehan*, 48 F.4th at 526 ("Given our conclusion that none of the defendants had minimum contacts with the United States, we need not determine whether exercising personal jurisdiction would 'violate traditional notions of fair play and substantial justice.'") (quoting *Int'l Shoe Co. v. Wash. Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). Nevertheless, if the Court evaluates this requirement, five factors are relevant to the analysis: "[1] The burden on the defendant, [2] the forum State's interest in adjudicating the dispute, [3] the plaintiff's interest in obtaining convenient and effective relief, [4] the interstate judicial system's interest in obtaining the most efficient resolution of the underlying dispute, and [5] the shared interest of the several States in furthering fundamental substantive social policies." *HANWJH*, 46 F.4th at 627 (quoting

*Illinois v. Hemi Group LLC*, 622 F.3d 754, 759 (7th Cir. 2010)).

Here, all five factors weigh against the exercise of personal jurisdiction comporting with traditional notions of fair play and substantial justice. In particular, Indiana has no legitimate interest in adjudicating a dispute about ballot-access laws in distant Texas, and Plaintiff has no legitimate interest in obtaining effective relief for her generalized political grievances—much less relief that is maximally "convenient." A plaintiff has no legitimate interest in "obtaining convenient and effective relief," where she attempts to bring together dozens of defendants, whose only connection is Plaintiff's wish that they conduct themselves in a manner more conducive to her conception of sound public policy. *See Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) ("A litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot."). Finally, the interests of the interstate judicial system would be severely harmed, rather than served, by "efficiently" aggregating Plaintiff's generalized grievances against far-flung States in a single State and seeking a quasi-nationwide injunction—to supplant the various Defendant-States' public policy with judicial action—given the nature of Plaintiff's claims. *Cf., e.g.,* Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 Harv. L. Rev. 417, 419 (2017) (noting the "growing literature critical of the national injunction" and lamenting that such injunctions exacerbate the problem of forum-shopping, thereby "arrest[ing] the development of the law in the federal system").

### III.   MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

This Court should dismiss Plaintiff's claims against Texas Defendants because they are merely generalized political grievances that are neither fairly traceable to any unlawful conduct of Texas Defendants nor likely to be redressed by a favorable decision of this Court. Furthermore,

Plaintiff's claims brought against Secretary Scott in his official capacity are barred by sovereign immunity.

## A. STANDARD OF REVIEW

The party invoking the federal court's jurisdiction bears the burden of establishing subject-matter jurisdiction. *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022) (citing *Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018) (per curiam)). "Furthermore, federal courts 'have an independent obligation to confirm [their] jurisdiction before adjudicating a case." *Int'l Union of Operating Eng'rs v. Daley*, 983 F.3d 287, 295 (7th Cir. 2020) (quoting *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 461 (7th Cir. 2020)). A "facial challenge" to subject-matter jurisdiction requires "that the court look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

## B. ARGUMENT & AUTHORITIES

Even accepting all of Plaintiff's allegations as true, her generalized political grievance does not constitute an injury-in-fact, is not fairly traceable to any unlawful conduct of Texas Defendants, and would not be redressed by a favorable decision of this Court. Likewise, even when viewing the Complaint in the light most favorable to Ms. Reinoehl, her claims against Secretary Scott are barred by sovereign immunity.

### 1. Plaintiff's claims fail each prong of the constitutional Standing analysis.

The requirement that the plaintiff have standing imposes a "fundamental limitation" upon a federal court's subject-matter jurisdiction. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). "If the plaintiff lacks standing, the federal court lacks subject matter jurisdiction and the

suit must be dismissed under Federal Rule of Civil Procedure 12(b)(1)." *Daley*, 983 F.3d at 294 (quoting *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017)) (cleaned up). To establish standing, a plaintiff must show: (1) an actual or imminent, concrete, and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is likely to be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). All three elements are "an indispensable part of the plaintiff's case," and the party seeking to invoke federal jurisdiction bears the burden to establish them. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992). Finally, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citations and quotations omitted).

### a.  Plaintiff's claims are merely generalized grievances shared by all voters and citizens.

The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573–574. Here, Plaintiff raises only generalized grievances that—were they legitimate—would be shared by the public writ large, and, therefore, she lacks standing to file suit against Texas Defendants, among others.

The gravamen of Plaintiff's suit boils down to her desire that this Court level the playing field between the major parties and third parties by ensuring that all ballot-access laws and regulations in the Defendant-States apply equally to candidates of any party or no party. *See* Dkt. #53.1 ¶ 164. Ms. Reinoehl alleges that this change would alleviate the alleged harm she suffers

when unequal ballot access "prevent[s] Plaintiff and others similarly situated from electing a candidate most likely to represent them and not business interests." *Id.* ¶ 39. Even assuming a causal link between ballot-access laws and electoral responsiveness to business interests, and even assuming a further causal link between electoral responsiveness to business interests and deterioration of the public welfare, this Court's imposing a one-size-fits-all equal-ballot-access regime on the Defendant-States would no more tangibly benefit Ms. Reinoehl than any other American. Ms. Reinoehl thus "does not state an Article III case or controversy." *Lujan*, 504 U.S. at 574; *see also Protect Our Park, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 731 (7th Cir. 2020) ("[T]he injury-in-fact requirement of federal standing demands that every plaintiff prove that he 'seeks relief for an injury that affects him in a personal and individual way.'") (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013)) (cleaned up).

Plaintiff's generalized political grievance does not constitute an injury-in-fact as a matter of law, and this Court should dismiss Plaintiff's claims against Texas Defendants for this reason alone.

**b.   Plaintiff's alleged injury is not fairly traceable to any unlawful conduct of Texas Defendants.**

Even if Plaintiff could allege an injury-in-fact, she would still need to show "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560. Here, Plaintiff alleges that equalizing ballot-access laws between the major parties and minor parties will lead to more robust electoral competition because undecided voters at the polls will then be reminded of many less-popular candidates, who are now kept off the ballot and would need to be written in. *See, e.g.,* Dkt. #53.1

¶¶ 44 & 84. This alleged injury is not fairly traceable to Texas Defendants because Plaintiff's theory relies on the independent action of voters all across America—a far too tenuous causal connection to satisfy the fair-traceability requirement. *See, e.g., Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976) (Article III "requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court."); *see also Daley*, 983 F.3d at 295-96 (holding that alleged compelled-speech and vote-dilution injury in labor-union election failed to satisfy fair-traceability requirement because it depended on the independent action of voting employees rather than the defendant's acts or omissions).

### c. Plaintiff's alleged injury would not be redressed by any relief this Court could properly provide.

"Redressability turns on the 'connection between the alleged injury and the judicial relief requested.'" *Pavlock v. Holcomb*, 35 F.4th 581, 588 (7th Cir. 2022) (quoting *Allen v. Wright*, 468 U.S. 747, 753 n.19 (1984)). Here, Ms. Reinoehl seeks only declaratory and injunctive relief—not money damages. *See* Dkt. #53.1 pp. 35-36 ¶¶ A-E. As discussed above, she seeks the Court's assistance in imposing her conception of equal ballot access on the Defendant-States in the hope that this will result in greater electoral competition, leading to political officeholders whose views are more aligned with Plaintiff's values. *See, e.g.*, Dkt. #53.1 ¶ 134 ("In the U.S. Constitution, states are ordered to allow Reinoehl and others similarly situated to vote for a candidate they believe will represent their voter values and beliefs in office."). Plaintiff's theory "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or predict." *Lujan*, 504 U.S. at 562 (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989) (Kennedy, J., plurality op.)).

Therefore, apart from the impropriety of either issuing injunctive relief against a former officeholder in her individual capacity (as Ms. Reinoehl attempts with Former Secretary Hughs)[2] or issuing injunctive relief far beyond the territorial jurisdiction of the Court in a case such as this, Plaintiff's alleged injury is not redressable by this Court because the Court "cannot presume either to control or predict" the independent decisions of millions of future voters. *Ibid.*

The more fundamental redressability problem is that "[a] federal injunction does not erase an unconstitutional state law from existence; federal courts cannot repeal state laws." *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 521 (7th Cir. 2021) (citations omitted). Yet, as a practical matter, that is exactly what Plaintiff's facial challenge against Texas ballot-access laws seeks—a permanent change to Texas ballot-access laws although *no* application of such laws has any legally cognizable effect on Ms. Reinoehl. In short, Ms. Reinoehl seeks judicial legislation to create "equal ballot access in all states," Dkt. #53.1 ¶ 125, she does not seek an injunction against an unconstitutional application of Texas ballot-access laws that personally affects her. Plaintiff's political grievances are not redressable by a court of law. *See* Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 936 (2018) ("The federal courts have no authority to erase a duly enacted law from the statute books, and they have no power to veto or suspend a statute. The power of judicial review is more limited: It permits a court to decline to enforce a statute in a particular case or controversy…").

### 2. Sovereign Immunity bars Plaintiff's claims against Secretary Scott.

---

[2] *See, e.g., Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 518 (7th Cir. 2021) ("Inexplicably, he remains a defendant in this official-capacity suit even though he is out of office and no relief can be ordered against him."); *see also id.* at 518-19 ("Under Rule 25(d) of the Federal Rules of Civil Procedure, when a public officer is sued in his official capacity and resigns from office while the suit is pending, his successor is automatically substituted.").

"[F]or over a century now, [the Supreme Court has] made clear that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000). Sovereign immunity "is a jurisdictional bar." *Valcq*, 16 F.4th at 520 (internal citations omitted). Absent a valid waiver by the State, abrogation by Congress, or proper invocation of the *Ex parte Young* exception, sovereign immunity bars suit against states in federal court, regardless of the nature of the remedy sought. *See, e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984); *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). "Suits against state officials in their official capacity [] should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

Plaintiff's § 1983 claim is barred by sovereign immunity because 42 U.S.C. § 1983 does not abrogate state sovereign immunity, *Quern v. Jordan*, 440 U.S. 332, 345 (1979), and Plaintiff has not invoked the *Ex parte Young* exception (nor could it be invoked based on Plaintiff's allegations).

## IV.   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Even if this Court could reach the merits of Plaintiff's claims, it should find that Ms. Reinoehl fails to state a claim on which relief may be granted because (1) her facial challenge to Texas ballot-access laws must fail where she cannot make a plausible showing that Texas ballot-access laws lack a plainly legitimate sweep, and (2) Texas ballot-access laws are reasonable, further the State's legitimate interests, and impose a trifling burden on the rights of Ms. Reinoehl or any Texan members of the class she purports to represent.

### A. STANDARD OF REVIEW

To avoid dismissal for failure to state a claim under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid*. Although the Court must take all of the factual allegations in the Complaint as true, it need not accept as true any legal conclusions couched as factual allegations. *Ibid*.

### B. ARGUMENT & AUTHORITIES

**1. Texas ballot-access laws have a plainly legitimate sweep and Plaintiff's facial challenge must fail for this reason alone.**

"[A] plaintiff can only succeed in a facial challenge by 'establishing that no set of circumstances exists under which the Act would be valid,' *i.e.*, that the law is unconstitutional in all of its applications." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). As Texas ballot-access laws have no legally cognizable application to Plaintiff, an Indiana resident, her challenge must be facial. *See generally* Dkt. #53.1; *cf., e.g., Washington State Grange*, 552 U.S. at 449 ("Respondents object to I-872 not in the context of an actual election, but in a facial challenge."). "All agree that a facial challenge must fail where the statute has a plainly legitimate sweep." *Ibid*.

Plaintiff makes conclusory assertions about ballot-access in Texas "under Texas Election Code Section 181." Dkt. #53.1 ¶ 63.[3] Assuming the truth of Plaintiff's assertions for purposes of

---

[3] *Compare Miller v. Hughs*, 2022 WL 4594025 at *2-*4 (W.D. Tex. Sept. 29, 2022) (discussing ballot access under the Texas Election Code in greater detail); *id.* at *6 (noting that the Green Party of Texas "retained ballot access by running candidates that received a sufficient number of votes to meet the 5% threshold," from 2010 until 2018); *id.* at *3 and *3 n.1 (noting that 2019 amendments to Texas Election Code decreased this threshold to 2%).

this Motion, her facial challenge still must fail as Texas ballot-access laws have a "plainly legitimate sweep." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 202 (2008) (Stevens, J., plurality op.) (quoting *Washington State Grange*, 552 U.S. at 449)); *see also Miller v. Hughs*, 2022 WL 4594025 at *12 (W.D. Tex. Sept. 29, 2022) ("In the face of Plaintiffs' failure to show that the challenged provisions—even taken together—impose severe burdens, the Court finds that the State's stated interest is sufficient to meet rational basis review, save for [the requirement that nominating petitions be printed and signed].").

### 2. Texas ballot-access laws are reasonable means of pursuing Legitimate State Interests.

To assess the constitutionality of ballot-access laws, Courts in the Seventh Circuit engage in a two-step inquiry. *Navarro v. Neal*, 716 F.3d 425, 430 (7th Cir. 2013). First, the Court determines "whether the law imposes severe or reasonable and nondiscriminatory restrictions on candidates' and voters' constitutional rights" to ensure "the appropriate level of scrutiny." *Ibid.* Second, the Court determines "whether the state interest offered in support of the law is sufficiently weighty under the appropriate level of scrutiny." *Ibid.* For severe restrictions, the challenged statute must be narrowly tailored to advance a compelling state interest. *Ibid.* (citing *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)). "For statutes that impose only 'reasonable, nondiscriminatory restrictions,' the state's 'important regulatory interests are generally sufficient.'" *Ibid.* (quoting *Burdick*, 504 U.S. at 434).

Ms. Reinoehl chides as "faulty reasoning" the argument that ballot-access requirements ensure candidates have a "modicum of support" because "this interest is true of members of the Republican and Democrat parties as well as for other parties." Dkt. #53.1 ¶¶ 101-02. Yet she ignores that winning the nomination to be candidate of either major party via a primary election is

itself an indication that a given candidate has the requisite "modicum of support." *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364-65 (1997) (noting that States have a legitimate interest in preventing "frivolous or fraudulent candidacies") (quoting *Bullock v. Carter*, 405 U.S. 134, 145 (1972)). "Many features of our political system—*e.g.*, single-member districts, 'first past the post' elections, and the high costs of campaigning—make it difficult for third parties to succeed in American politics. But the Constitution does not require States [to level the playing field on behalf of minor political parties]." *Id.* at 362 (internal citation omitted). In short, there is nothing "unreasonably exclusionary" about Texas's ballot-access requirements and "States need not remove all of the many hurdles third parties face in the American political arena today." *Id.* at 367.

### 3. Texas's important regulatory interests are sufficient to justify these reasonable, nondiscriminatory restrictions.

Where, as here, the burden on the right to participate in the political arena is slight, "the state's 'important regulatory interests are generally sufficient.'" *Navarro*, 716 F.3d at 430 (quoting *Burdick*, 504 U.S. at 434). "There is ample caselaw supporting the proposition that ballot access laws serve the important, interrelated goals of preventing voter confusion, blocking frivolous candidates from the ballot, and otherwise protecting the integrity of elections." *Id.* at 431. Texas's ballot-access laws serve all of these legitimate interests as well, and this Court should decline Plaintiff's invitation to displace the policy choices of the Texas legislature, especially where those policy choices are reasonable, nondiscriminatory means of pursuing Texas's legitimate interests in protecting the integrity of elections.

### PRAYER

For all these reasons, Defendants Texas Secretary of State John Scott and Former Texas

Secretary of State Ruth R. Hughs respectfully ask the Court to dismiss Plaintiff's claims against them.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN COWLES**
Deputy Attorney General for Civil Litigation

**CHRISTOPHER HILTON**
Chief for General Litigation Division

*/s/ PIERCE SMITH*
**PIERCE SMITH**
Attorney-in-charge
Texas Bar No. 24122531
Office of the Attorney General
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667
Pierce.Smith@oag.texas.gov

**ATTORNEYS FOR DEFENDANTS**
**TEXAS SECRETARY OF STATE JOHN SCOTT AND FORMER TEXAS SECRETARY OF STATE RUTH R. HUGHS**

### CERTIFICATE OF SERVICE

I, Pierce Smith, hereby certify that on December 19, 2022 a true and correct copy of the foregoing document has been sent to all interested parties registered for electronic service with the Southern District's CM/ECF System on or about the time this document was electronically filed with the Clerk and electronic mail to any party listed below that is not registered:

**Jennifer Reinoehl**

51860 CHERYL DR.

GRANGER, IN 46530

(574)302-6088

commercialsonly@juno.com