FILED
01/06/2023
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| **JENNIFER J. REINOEHL** | ) | |
| PLAINTIFF | ) | Case No. 1:22-CV-1974 JRS-TAB |
| v. | ) | Hon. JAMES R. SWEENEY, II |
| **JOHN H. MERRILL, ET AL.** | ) | MAG. TIM A. BAKER |
| DEFENDANTS | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MISSOURI SECRETARY OF STATE JOHN R. ASHCROFT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

### I.     Introduction

Plaintiff respectfully opposes the Defendant, Missouri Secretary of State John R. Ashcroft's (herein "SoS. Ashcroft") Motion to Dismiss. SoS. Ashcroft primarily argues that this Court does not have personal jurisdiction over him because Missouri's election laws concerning who can and cannot be on its ballot do not affect citizens of any other states. However, it is impossible for any candidate to be elected to the position of president unless that candidate is on a majority of state ballots. It is extremely difficult for candidates from a single state to get anything passed in Congress or the Senate because they cannot by themselves form a majority. Federal election results in Missouri do affect Reinoehl because the leaders elected in a Federal election in

1

Missouri become Reinoehl's leaders and leaders for citizens of other states outside of Missouri. If Missouri prohibits candidates Reinoehl wishes to vote for from being on its ballots while always allowing Republicans and Democrats access, then Reinoehl is prohibited from associating with politically like-minded people in Missouri, and politically like-minded people are prohibited from associating with Reinoehl in Indiana. "Restrictions upon the access of political parties to the ballot impinge upon the rights of individuals to associate for political purposes, as well as the rights of qualified voters to cast their votes effectively." *Munro v. Socialist Workers Party*, 479U.S.189, 193, 107S.Ct.533, 93L.Ed.2d 499(1986). "It is well-settled that '[t]he impact of candidate eligibility requirements on voters implicates basic constitutional rights' to associate politically with like-minded voters and to cast a meaningful vote." *Stone v. Bd. of Election Comm'rs for City of Chi.*, 750F.3d 678, 681(7th Cir.2014) (quoting *Anderson v. Celebrezze*, 460U.S.780, 786, 103 S.Ct.1564, 75 L.Ed.2d 547 (1983)); see also *Norman v. Cook Cty. Officers Electoral Bd.*, 502U.S. 279, 288, 112S.Ct.698, 116L.Ed.2d711(1992) (footnote omitted) ("The right [to create and develop new political parties] derives from the First and Fourteenth Amendments and advances the constitutional interest of like-minded voters to gather in pursuit of common political ends, thus enlarging the opportunities of all voters to express their own political preferences.), *Nader v. Keith*, 385F.3d729, 737(7th Cir. 2004).

SoS. Ashcroft's actions are purposefully directed at disenfranchising independent and third-party voters *in every state* including but not limited to Reinoehl. By giving Republicans and Democrats a free pass to be on the ballot despite their declining party numbers, he allows those two parties to continue gathering votes from voters who do not have the time or ability to memorize third party/independent candidate names. Republicans and Democrats spend much time and money in Courts getting third parties/independents reduced to write-in status because removing

2

third party/independent pre-printed names increases votes for them—forcing voters to associate with those two parties or forego voting altogether.

## II.   Facts

> "In Missouri, to obtain ballot access under the Revised Statutes of Missouri Chapter 115, Republicans and Democrats are not required to get any signatures when running for U.S. Senator or U.S. Representative and only need 5,000 signatures to get a Presidential candidate on the ballot. In contrast, third parties and independents need about 10,000 signatures to be on the Federal election ballot in addition to numerous other differing bureaucratic requirements." (First Amended Complaint ¶55).

In Missouri election laws allow for disparate treatment between the "established" Democrat/ Republican candidates and third-party/ independent candidates. Despite declining numbers of Republicans and Democrats and increasing numbers of third-party members and independents, SoS. Ashcroft has not required Democrats or Republicans to obtain the same number of signatures establishing that their Federal candidates had a modicum of support within the state. (First Amended Complaint ¶102-109).

The result is that voters who were members of the Democrat and Republican parties or those who wished to vote for Democrat or Republican candidates simply had to make a mark next to the candidate they preferred. In contrast, those wishing to vote for third parties or independent candidates, such as Reinoehl, had to learn how to spell their candidate's name properly and hope that the way they wrote the name was both legible and accepted—even though SoS. Ashcroft never published a list of acceptable spellings/name formations where voters could see them—inside or outside voting places. (First Amended Complaint ¶89). Further, independent voters could not carry buttons or campaign materials into the voting areas to refer to an accurate spelling of their preferred candidates' names in Missouri. (First Amended Complaint ¶86).

Citizens vote for candidates that are printed on the ballot in greater proportion than they vote for a third-party or independents because writing in a name is more difficult than checking a box. (First Amended Complaint ¶84). It is difficult for voters to find out which write-in candidates will be accepted in their states. (First Amended Complaint ¶89).

Reinoehl has been politically active since before she turned 18. (First Amended Complaint ¶35). She has long advocated on social media for voting for candidates and not parties. She frequently has had to sneak slips of paper with candidates' names discretely into voting areas so she can see how to spell the names of the candidates for whom she votes. She is constantly worried that she will be caught and prohibited from voting.

Others have repeatedly accused her of "wasting" her vote because without ballot access statistically third parties and independents do not get elected and it is impossible for a presidential candidate to get elected if s/he does not appear on the ballots in enough states to form an electoral college majority. (First Amended Complaint ¶127). Reinoehl discovered in 2020 that not only was ballot access unequally determined in her state and others, but also that Republicans and Democrats regularly use these unequal ballot access laws to get the Courts to remove third-parties names from the ballots so they can gain votes for their own candidates. (First Amended Complaint ¶126). Both Democrats and Republicans know that many of those who would have voted for the third-party candidate would no longer do so if s/he could not see the candidate's name on the ballot.

Third-parties, on the other hand, cannot remove Democrats or Republicans from the ballot because states like Missouri have given Republicans and Democrats a free pass with few steps to follow each year beyond filing their candidates' names. (First Amended Complaint ¶123-124). These states, including but not limited to Missouri and those in charge of Federal elections for

4

their state, including but not limited to SoS. Ashcroft, continue to claim they must treat third-parties and independents unequally to determine whether or not the third-parties and independents have a "modicum of support." They ignore that the number of people who support Democrats and Republicans is in decline and that there are often major splits within the Democrat and Republican parties concerning candidates, such as in the 2016 and 2020 elections. (Complaint ¶93, 103-108). The current debate over the next Speaker of the House highlights one of many of these intra-party divisions.

### III.   ARGUMENT

SoS. Ashcroft's Motion is primarily based on allegations that this Court does not have personal jurisdiction over him specifically. He cites cases in which the Court did not have personal jurisdiction over any of the Defendants. However, even in Missouri when Defendants come from diverse jurisdictions, the Court gains personal jurisdiction over all Defendants if it has personal jurisdiction over one or more of them. See *State ex rel. Missouri Department of Natural Resources v. Roper*, 824 S.W.2d 901, 903 (Mo. banc 1992).

SoS. Ashcroft continues by arguing that Reinoehl failed to establish standing because she made a conclusion based on facts stated in the First Amended Complaint.

> "A document filed pro se is 'to be liberally construed,' *Estelle*, 429
> U. S., at 106, and 'a pro se complaint, however inartfully pleaded,
> must be held to less stringent standards than formal pleadings
> drafted by lawyers,' *ibid*. (internal quotation marks omitted). Cf.
> Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as
> to do substantial justice")." *Erickson v. Pardus*, 551 U.S. 89
> (2007).

And finally, SoS. Ashcroft claims 11th Amendment immunity, but even the Missouri Supreme Court in *Missouri Prot. & Advocacy Services, Inc. v. Carnahan*, 499 F3d803 agreed that in cases such as this when Constitutional Rights are in question that *Ex parte Young*::209 U.S. 123 (1908) applies and 11th Amendment immunity is not extended to Defendants.

5

**A. The Court Has Personal Jurisdiction Over All Defendants**

SoS. Ashcroft states that this Court does not have personal jurisdiction over him because Reinoehl only asserts "Defendants Connie Lawson and Holli Sullivan are both situated in the Southern District of Indiana." (Doc 63; PageID#430). 28U.S. Code §1367(a) states, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." All the claims in this lawsuit arise from Defendants' violations of the First and Fourteenth Amendments of the United States Constitution by continuing to allow Democrat and Republican candidates to be pre-printed on their states' Federal election ballots even when those candidates could not have obtained the showing of a modicum of support required of third parties/independents. Two of the Defendants both reside in, do business in, and committed their acts in Indiana. The rest of the Defendants committed acts in their home states that deprived Indiana citizens of their rights in Indiana.

This Court has personal jurisdiction over SoS. Ashcroft because Missouri election laws enforced by him in Federal elections harm Reinoehl in her home state of Indiana. In the cited *Day v. Subsecretario del Sistema Penitenciario Federal*, 838 Fed.Appx. 192, 193 (7th Cir. 2021), the 7th Circuit states, "There may well be personal jurisdiction over units of the Mexican government…" and "Day does not allege that any natural person holding any of the five named offices did anything to Day's detriment in the United States." In *Day v. Subsecretario del Sistema Penitenciario Federal*, Day was solely harmed in Mexico. SoS. Ashcroft's actions in Missouri harmed Reinoehl and other independent voters across the United States in their home states by making it easier for citizens of Missouri to vote for Republicans and Democrats in Federal

elections that affect the entire country—whether or not those Republican and Democrat candidates have a modicum of support. In *Day v. Subsecretario del Sistema Penitenciario Federal*, the Court stated it did not have personal jurisdiction over *any* of the Defendants. The Courts also found they did not have personal jurisdiction over *any* of the Defendants in the cited *Morningside Church, Inc. v. Rutledge*, 9 F.4th 615 (8th Cir. 2021) and *Walden v. Fiore*, 571 U.S. 277, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014). Even Missouri Courts have ruled that when personal jurisdiction can be found for one Defendant in a multi-Defendant case, then venue is proper:

> "The only issue is whether a case against a state agency must be brought in the county of its legal residence when there are additional defendant(s) who otherwise could be sued in the county of their residence under §508.010(2) RSMo 1986, the "general" venue statute. This Court concludes that there is no constitutional or statutory requirement that such actions be brought only in the county of residence of the state agency." *State ex rel. Missouri Department of Natural Resources v. Roper*, 824 S.W.2d 901, 903 (Mo. banc 1992)

Further, the entire case and not just one Defendant's situation must be considered when determining personal jurisdiction:

> "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.' *Shaffer v. Heitner,* 433 U. S. 186, 433 U. S. 204 (1977). *See also Rush v. Savchuk,* 444 U. S. 320, 444 U. S. 332 (1980). Thus, it is relevant to the jurisdictional inquiry here that petitioner is seeking to recover damages suffered in all States in one suit. The contacts between respondent and the forum must be judged in light of that claim, rather than a claim only for damages sustained in New Hampshire." *Keeton v. Hustler Magazine*, Inc., 465 U.S. 770, 775 (1984).

And,

> "Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute, see *McGee v. International Life Ins. Co*., 355U.S.220, 355 U.S.223(1957); the plaintiff's interest in obtaining convenient and effective relief, see *Kulko v. California Superior Court*, supra at 436U.S.92, at least when that interest is not adequately protected

7

> by the plaintiff's power to choose the forum, cf. *Shaffer v. Heitner*, 433U.S.186, 433U.S.211, n.37(1977); the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies, see *Kulko v. California Superior Court*, supra at 436U.S.93, 436U.S.98."
> *World-Wide Volkswagen Corp. v. Woodson*, 444U.S.286(1980)

All the Defendants, including SoS. Ashcroft, are responsible for deciding which candidates go on the ballots in their own states during Federal elections, but their actions affect every United States citizen. Reinoehl is an Indiana resident and the actions of SoS. Ashcroft injured her in Indiana by making her votes unmeaningful. See *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592U.S.___(2021). The Court has personal jurisdiction in this specific litigation over all Defendants for their actions, which have affected every citizen of the United States by limiting the leaders who could be elected to Federal Government positions and injured independents and disgruntled Republicans and Democrats from effectively voting for and associating with candidates who are not sponsored by the Republican or Democrat parties.

While claiming "courts have found that [SoS. Ashcroft] is tasked only with enforcing or implementing Missouri election law in certain circumstances not present here," (Doc 63; PageID#431) SoS. Ashcroft cites *Missouri Prot. & Advocacy Services, Inc. v. Carnahan*, 499 F3d803, in which the Court ruled,

> "At the outset, defendants argue that the Missouri Secretary of State and Attorney General have no real connection with the enforcement of Missouri's laws regarding the loss of voting rights by persons under guardianship and therefore this suit is barred by the Eleventh Amendment. *Like the district court, we disagree*."
> *Missouri Prot. & Advocacy Services, Inc. v. Carnahan*, 499 F3d803. [Emphasis added].

And

> "[T]he Secretary of State is 'the chief state election official responsible for overseeing of the voter registration process.' See

8

> Mo.Rev.Stat.§§115.015, 115.141, 115.023.1, 115.155, 115.160.3."
> *Missouri Prot. & Advocacy Services, Inc. v. Carnahan*.

See also Mo.Rev.Stat.§§115.333:

> "When any [potential candidate's] petition is filed with the secretary of state or an election authority under the provisions of this subchapter, the secretary of state or the election authority shall determine whether or not it complies with the provisions of this subchapter…"1

Not only was the Secretary of State (and Attorney General) deemed to be an appropriate Defendant in that case concerning whether a person who was "under guardianship" could vote or not, but the Court also stated, "[a]ccordingly, the Ex parte Young exception to Eleventh Amendment immunity applies. See *Reprod. Health Servs*., 428 F.3d at 1145." *Missouri Prot. & Advocacy Services, Inc. v. Carnahan*.

While SoS. Ashcroft states he has no association with Indiana or its candidates or its residents or with ballot access in general, he had a link on his official government website in 2020 specifically informing Presidential election candidates from any state, including Indiana, what they must do to get on the ballot in Missouri and providing them with the forms to do so.[2] (As did *every* Defendant listed in this lawsuit.) He was directly responsible for determining who did and who did not achieve ballot access in the 2020 Missouri Federal Election.

Reinoehl is not suing SoS. Ashcroft because she wishes him to "enforce or implement Indiana election law." (Doc 63; PageID#431) Reinoehl is suing SoS. Ashcroft because of how he unconstitutionally and unequally enforces and implements *Missouri* election law.

This is not a case filed under state laws—nor is it seeking to change established state laws in regards to third parties/independents. It simply seeks to have those laws applied universally.

---

[1] SoS. Ashcroft has collected all Missouri's election laws, including those concerning his election responsibilities here: https://www.sos.mo.gov/CMSImages/ElectionGoVoteMissouri/CurrentElectionLawBook.pdf
[2] https://web.archive.org/web/20200412222820/https://www.sos.mo.gov/elections/candidates

9

This case invokes a federal question concerning unequal ballot access laws in general. Reinoehl seeks the freedom to cast a meaningful vote for candidates with whom she wishes to associate and cannot do so unless all candidates, including Republicans and Democrats, equally earn ballot access.

**B. Reinoehl Has Standing.**

SoS. Ashcroft alleges that Reinoehl does not have standing because she did not allege she suffered an injury in fact. (Doc 63; PageID#431). Reinoehl states, "Defendants have all harmed Reinoehl by rendering her vote meaningless and making it impossible for the candidates and parties with whom she wishes to associate from gaining a majority of the votes." (First Amended Complaint ¶154). Reinoehl has standing to bring this lawsuit because as an independent voter, she was harmed by Missouri's election laws since third parties and candidates for whom she wished to vote were disproportionately only available as write-in candidates on Missouri's ballots as a result of SoS. Ashcroft enforcing Missouri's unconstitutional ballot access laws. Federal ballot access does not solely affect the citizens of the state in which the unequal laws are created and enforced nor does it solely effect election candidates. When a state determines who will and will not be on its ballots, it affects United States leadership as a whole, which affects every citizen of the United States. It also injures like-minded voters by preventing them from associating with each other across state lines.

Reinoehl has been injured by not seeing her candidates on the ballot. She has been injured by constantly seeing Republican and Democrat candidates on the ballot and by their ability to avoid election requirements that they take third parties/independents to court for not following. Reinoehl does not ask for all candidate names to be on the ballot so voters can choose between them easily. Nor does she ask this Court to elect her chosen candidates. She only wants election

laws enforced equally so Democrats and Republicans also have the same chances as third parties/independents of not being on the ballot when they do not have a modicum of support.

Although SoS. Ashcroft claims the injury of preventing like-minded voters in Indiana and Missouri from associating with each other by voting for the same candidate is not traceable to him. (Doc 63; PageID#431). However, SoS. Ashcroft is the Secretary of State for Missouri and as such is Missouri's chief election official. (First Amended Complaint ¶15). See also *Missouri Prot. & Advocacy Services, Inc. v. Carnahan*, 499 F3d803. It is and was his job to see all Missouri's elections laws are upheld equally. In this case, he has failed to require Republican and Democrat candidates show they have a modicum of support in Missouri, while forcing third parties/independents to show the same. Thus, he encourages like-minded voters not to associate with Reinoehl, independent candidates, third-party candidates, or like-minded voters in states outside of Missouri by always offering Missouri voters Republican and Democrat candidates pre-printed on their ballots as an easy vote.

SoS. Ashcroft also alleges that Reinoehl's injury is not likely to be redressed by a favorable judicial decision. However, Reinoehl's injury can be redressed by a favorable decision from this Court because if Republicans and Democrats are subject to the same signature requirements as third parties/independents, Reinoehl and other voters not affiliated with a party will be able to vote, knowing that even though their preferred candidate may not make it on the ballot and may be resigned to write-in status, Republicans and Democrats will also have the same chance of being resigned to write-in status. Independents' votes become meaningful when they go to a candidate with an equal chance of being elected.

As a voter who is unaffiliated with any political party, Reinoehl has standing to bring this lawsuit because she, herself, is affected by laws that prevent those for whom she wishes to vote

from having their names printed on the ballots while allowing Republicans and Democrats to always have candidate names printed on the ballots.

**C. SoS. Scott Is Not Protected By Sovereign or Qualified Immunity.**

Both the U.S. Supreme Court and the Missouri Supreme Court have held that the Eleventh Amendment does not prevent cases against state officials to enjoin enforcement of an allegedly unconstitutional statute, provided that "such officer [has] some connection with the enforcement of the act." See *Ex parte Young*, 209U.S. at157, 28S.Ct.441.

The 8th Circuit has accepted that the Chief Election Official (SoS. Ashcroft in Missouri) is responsible for overseeing elections and falls under *Ex Parte Young's* "some connection." See *Missouri Prot.& Advoc. Servs., Inc. v. Carnahan,* 499F.3d803 (8th Cir.2007).

## CONCLUSION

For the reasons set forth above, SoS. Ashcroft's Motion to Dismiss the First Amended Complaint should be summarily denied.


Respectfully submitted,

**Jennifer Reinoehl,** Pro Se Plaintiff 1/06/23
51860 Cheryl Dr.
Granger, IN, 46530
574-302-6088
E-Mail: commercialsonly@juno.com

**CERTIFICATE OF SERVICE**

 I HEREBY CERTIFY that the foregoing was filed by e-mail with the Clerk of the Court January 6, 2023, and it was thereon entered into the ECF system and distributed to all Defendants Attorneys.

 Respectfully submitted,

**Jennifer Reinoehl,** Pro Se Litigant  1/06/23
51860 Cheryl Dr, Granger, IN, 46530
Phone: 574-302-6088;
E-mail: commercialsonly@juno.com