**FILED**

01/10/2023

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| **JENNIFER J. REINOEHL** | ) | |
| PLAINTIFF | ) | Case No. 1:22-CV-1974 JRS-TAB |
| v. | ) | Hon. JAMES R. SWEENEY, II |
| **JOHN H. MERRILL, ET AL.** | ) | MAG. TIM A. BAKER |
| DEFENDANTS | ) | |

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT NEVADA SECRETARY OF STATE BARBARA CEGAVSKE'S MOTION TO DISMISS

## I.     Introduction

Plaintiff respectfully opposes the Defendant, Nevada Secretary of State Barbara Cegavske's (herein "SoS. Cegavske") Motion to Dismiss. SoS. Cegavske primarily argues that this Court does not have personal jurisdiction over her because Nevada's election laws concerning who can and cannot be on its ballot do not affect citizens of any other states. However, it is impossible for any candidate to be elected to the position of president unless that candidate is on a enough state ballots to obtain a majority of electoral votes. It is extremely difficult for candidates from a single state to get anything passed in Congress or the Senate because they cannot by

1

themselves form a majority. Federal election results in Nevada do affect Reinoehl because the leaders elected in a Federal election in Nevada become Reinoehl's leaders and leaders for citizens of other states outside of Nevada. If Nevada prohibits candidates Reinoehl wishes to vote for from being on its ballots while always allowing Republicans and Democrats access, then Reinoehl is prohibited from associating with politically like-minded people in Nevada, and politically like-minded people are prohibited from associating with Reinoehl in Indiana. "Restrictions upon the access of political parties to the ballot impinge upon the rights of individuals to associate for political purposes, as well as the rights of qualified voters to cast their votes effectively." *Munro v. Socialist Workers Party*, 479U.S.189, 193, 107S.Ct.533, 93L.Ed.2d 499(1986). "It is well-settled that '[t]he impact of candidate eligibility requirements on voters implicates basic constitutional rights' to associate politically with like-minded voters and to cast a meaningful vote." *Stone v. Bd. of Election Comm'rs for City of Chi.*, 750F.3d 678, 681(7th Cir.2014) (quoting *Anderson v. Celebrezze*, 460U.S.780, 786, 103 S.Ct.1564, 75 L.Ed.2d 547 (1983)); see also *Norman v. Cook Cty. Officers Electoral Bd.*, 502U.S. 279, 288, 112S.Ct.698, 116L.Ed.2d711(1992) (footnote omitted) ("The right [to create and develop new political parties] derives from the First and Fourteenth Amendments and advances the constitutional interest of like-minded voters to gather in pursuit of common political ends, thus enlarging the opportunities of all voters to express their own political preferences.), *Nader v. Keith*, 385F.3d729, 737(7th Cir. 2004).

SoS. Cegavske's actions are purposefully directed at disenfranchising independent and third-party voters *in every state* including but not limited to Reinoehl. (First Amended Complaint ¶31). By giving Republicans and Democrats a free pass to be on the ballot despite their declining party numbers, she allows those two parties to continue gathering votes from voters who do not

2

have the time or ability to memorize third party/independent candidate names. Republicans and Democrats spend much time and money in Courts removing third party/independent pre-printed names from ballots because it increases votes for them—forcing voters to associate with those two parties or forego voting altogether.

SoS. Cegavske falsely states, "[Reinoehl] contends that the laws in and outside Indiana imposing requirements on third-party and independent candidates as a condition of appearing on preprinted election ballots in the individual states violates her First and Fourteenth Amendment rights…" Reinoehl actually states that *by not imposing* the same requirements imposed on third-party and independent candidates on Republicans and Democrats as a condition of appearing on the preprinted election ballots in the individual states, they have violated her First and Fourteenth Amendment rights. Reinoehl is not seeking to change any state laws imposed on third-party or independent candidates. She is seeking to force Republican and Democrat candidates to also be subjected to those laws. (First Amended Complaint ¶101).

## II.     Facts

> "In Nevada, to obtain ballot access under Nevada Code Title 24 Chapter 293, Republicans and Democrats are not required to get any signatures when running for President or pay a filing fee. In contrast, third parties and independents need about 9,600 signatures to be on the ballot and need to pay a $250.00 filing fee to be on the ballot as a Presidential candidate in addition to numerous other differing bureaucratic requirements." (First Amended Complaint ¶57).

In Nevada election laws allow for disparate treatment between the "established" Democrat/ Republican candidates and third-party/ independent candidates. Despite declining numbers of Republicans and Democrats and increasing numbers of third-party members and independents, SoS. Cegavske has not required Democrats or Republicans to obtain the same

3

number of signatures establishing that their Federal candidates had a modicum of support within the state. (First Amended Complaint ¶102-109).

The result is that voters who were members of the Democrat and Republican parties or those who wished to vote for Democrat or Republican candidates simply had to make a mark next to the candidate they preferred. In contrast, those wishing to vote for third parties or independent candidates, such as Reinoehl, had to learn how to spell their candidate's name properly and hope that the way they wrote the name was both legible and accepted—even though SoS. Cegavske never published a list of acceptable spellings/name formations where voters could see them—inside or outside voting places. (First Amended Complaint ¶89).

Citizens vote for candidates that are printed on the ballot in greater proportion than they vote for a third-party or independents because writing in a name is more difficult than checking a box. (First Amended Complaint ¶84). It is difficult for voters to find out which write-in candidates will be accepted in their states—but in Nevada, write-in votes are not even allowed at all. (First Amended Complaint ¶89).

Reinoehl has been politically active since before she turned 18. (First Amended Complaint ¶35). She has long advocated on social media for voting for candidates and not parties.

Others have repeatedly accused her of "wasting" her vote because without ballot access statistically third parties and independents do not get elected and it is impossible for a presidential candidate to get elected if s/he does not appear on the ballots in enough states to form an electoral college majority. (First Amended Complaint ¶127). Reinoehl discovered in 2020 that not only was ballot access unequally determined in her state and others, but also that Republicans and Democrats regularly use these unequal ballot access laws to get the Courts to remove third-parties names from the ballots so they can gain votes for their own candidates. (First Amended Complaint

¶126). Both Democrats and Republicans know that many of those who would have voted for the third-party candidate would no longer do so if s/he could not see the candidate's name on the ballot.

Third-parties, on the other hand, cannot remove Democrats or Republicans from the ballot because states like Nevada have given Republicans and Democrats a free pass with few steps to follow each year beyond filing their candidates' names. (First Amended Complaint ¶123-124). These states, including but not limited to Nevada and those in charge of Federal elections for their state, including but not limited to SoS. Cegavske, continue to claim they must treat third-parties and independents unequally to determine whether or not the third-parties and independents have a "modicum of support." They ignore that the number of people who support Democrats and Republicans is in decline and that there are often major splits within the Democrat and Republican parties concerning candidates, such as in the 2016 and 2020 elections. (Complaint ¶93, 103-108). The debate that recently occurred over the next Speaker of the House highlights one of many of these intra-party divisions.

### III.  ARGUMENT

SoS. Cegavske's Motion is primarily based on allegations that this Court does not have jurisdiction to hear the case. She cites cases in which the Court did not have personal jurisdiction over *any* of the Defendants.

SoS. Cegavske continues by arguing that Reinoehl failed to establish standing because Reinoehl only made a "generalized grievance that will not personally benefit her more than the general public." However, although forcing Republicans and Democrats to follow the same election ballot access laws as Independents will give Independents an opportunity to cast a

5

meaningful vote, neither Republican or Democrat members of the general public will benefit from losing their automatic ballot access.

SoS. Cegavske also states that Reinoehl fails to state a claim in her Complaint. however, the purpose of a Complaint is to put Defendants on notice of the case and the charges against them. A "dismissal is appropriate only if [the Plaintiff] is unable to present any set of facts consistent with the complaint which would entitle him to recover. *Crenshaw v. Baynerd*, 180 F.3d 866, 868 (7th Cir. 1999).

> "A document filed pro se is 'to be liberally construed,' *Estelle*, 429 U. S., at 106, and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,' *ibid*. (internal quotation marks omitted). Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice")." *Erickson v. Pardus*, 551 U.S. 89 (2007).

And finally, SoS. Cegavske claims 11th Amendment immunity, but when Constitutional Rights are in question, *Ex parte Young*::209 U.S. 123 (1908) applies and 11th Amendment immunity is not extended to Defendants. Further, "An individual capacity suit is not barred by the Eleventh Amendment" *Brokaw v. Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000).

**A. Reinoehl Properly Performed Service Under Fed.R.Civ.P. 4**

In a footnote, SoS. Cegavske challenges that she was "personally served with the complaint" under Fed.R.Civ.P. 4 (e), but fails to develop this argument beyond that statement. (Doc#72, PgeID.492). Both SoS. Cegavske and her counsel, Nevada Attorney General, Aaron D. Ford were served by a person over the age of 18 that was not a party to the Complaint by Certified First Class Mail with Return Receipt requested in accordance with Fed.R.Civ.P. 4(e)(1). The proof of service containing the Return Receipts for both SoS. Cegavske and the Nevada Attorney General was filed by e-mailing a PDF version of it to the Court on November 16, 2022. Further,

SoS. Cegavske mailed a letter directly to Reinoehl on Nevada Secretary of State letterhead confirming receipt of the Summons and Complaint.

**A. The Court Has Personal Jurisdiction Over All Defendants**

SoS. Cegavske states that this Court does not have personal jurisdiction over her because she has not visited Indiana and does not have control over Indiana election laws. However, she is being sued because the Nevada Secretary of State has control over Nevada election laws and therefore can prevent candidates for whom Reinoehl wishes to vote from being elected in a National election. 28U.S. Code §1367(a) states,

> "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

All the claims in this lawsuit arise from Defendants' violations of the First and Fourteenth Amendments of the United States Constitution by continuing to allow Democrat and Republican candidates to be pre-printed on their states' Federal election ballots even when those candidates could not have obtained the showing of a modicum of support required of third parties/independents. Two of the Defendants both reside in, do business in, and committed their acts in Indiana. The rest of the Defendants committed acts in their home states in a way that deliberately deprived Indiana citizens of their rights in Indiana.

This Court has personal jurisdiction over SoS. Cegavske because Nevada election laws enforced by her in Federal elections harm Reinoehl in her home state of Indiana. In the cases cited by SoS. Cegavske, the Courts found they did not have personal jurisdiction over *any* of the Defendants and that is why jurisdiction was denied. See *Purdue Research v. Sanofi-Synthelabo*, S.A, 338 F.3d 773 (7th Cir. 2003), *Wine & Canvas Development, LLC v. Weisser*, 886 F. Supp. 2d

930 (S.D. Ind. 2012), *Tamburo v. Dworkin,* 601 F.3d 693, 701 (7th Cir. 2010)(stating "Illinois cannot exercise general personal jurisdiction over any of the defendants in this case.") and *Walden v. Fiore*, 571 U.S. 277, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014).

Further, the entire case and not just one Defendant's situation must be considered when determining personal jurisdiction:

> "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.' *Shaffer v. Heitner,* 433 U. S. 186, 433 U. S. 204 (1977). *See also Rush v. Savchuk,* 444 U. S. 320, 444 U. S. 332 (1980). Thus, it is relevant to the jurisdictional inquiry here that petitioner is seeking to recover damages suffered in all States in one suit. The contacts between respondent and the forum must be judged in light of that claim, rather than a claim only for damages sustained in New Hampshire." *Keeton v. Hustler Magazine*, Inc., 465 U.S. 770, 775 (1984).

And,

> "Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute, see *McGee v. International Life Ins. Co*., 355U.S.220, 355 U.S.223(1957); the plaintiff's interest in obtaining convenient and effective relief, see *Kulko v. California Superior Court*, supra at 436U.S.92, at least when that interest is not adequately protected by the plaintiff's power to choose the forum, cf. *Shaffer v. Heitner*, 433U.S.186, 433U.S.211, n.37(1977); the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies, see *Kulko v. California Superior Court*, supra at 436U.S.93, 436U.S.98." *World-Wide Volkswagen Corp. v. Woodson*, 444U.S.286(1980) See also *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1987).

All the Defendants, including SoS. Cegavske, are responsible for deciding which candidates go on the ballots in their own states during Federal elections, but their actions affect every United States citizen. Reinoehl is an Indiana resident and the actions of SoS. Cegavske

8

injured her in Indiana by making her votes unmeaningful. See *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592U.S.___(2021). The Court has personal jurisdiction in this specific litigation over all Defendants for their actions, which have affected every citizen of the United States by limiting the leaders who could be elected to Federal Government positions and injured independents and disgruntled Republicans and Democrats from effectively voting for and associating with candidates who are not sponsored by the Republican or Democrat parties. Indiana, whose Secretary of State and former Secretary of State are Defendants, has an interest in resolving this case. *McGee v. International Life Ins. Co*., 355U.S.220, 355 U.S.223(1957). Reinoehl also has an interest in obtaining convenient and effective relief.

Further, while SoS. Cegavske states she has no association with Indiana concerning or or with ballot access in general, the Nevada Secretary of State website specifically states, "The Secretary of State is the filing officer for all federal offices except for United States House of Representatives, Districts 1 and 3."[1] In fact, all presidential candidates, most of whom reside outside the state of Nevada, wishing to have ballot access must file their papers directly with the Secretary of State. She was directly responsible for determining who did and who did not achieve ballot access in the 2020 Nevada Federal Election. (First Amended Complaint ¶18).

Reinoehl is not suing SoS. Cegavske because she wishes her to supervise "the ballot access laws, processes or procedures of Indiana or any other jurisdiction [than that of the state of Nevada]." (Doc.72 PageID#496) Reinoehl is suing SoS. Cegavske because of how she unconstitutionally and unequally enforces and implements *Nevada* election law.

This is not a case filed under state laws—nor is it seeking to change established state laws in regards to third parties/independents. It simply seeks to have those laws applied universally.

---

[1] https://www.nvsos.gov/sos/elections/candidate-information/filing-for-non-judicial-office

This case invokes a federal question concerning unequal ballot access laws in general. Reinoehl seeks the freedom to cast a meaningful vote for candidates with whom she wishes to associate and cannot do so unless all candidates, including Republicans and Democrats, equally earn ballot access.

**B. Reinoehl Has Standing.**

SoS. Cegavske alleges the U.S. Constitution guarantees "a republican (not representative) form of government." However, the definition of a "republican" form of government is "a state in which supreme power *is held by the people* and their *elected representatives*." (Oxford Languages- emphasis added) SoS. Cegavske fails to explain how requiring Democrats and Republicans to follow the same laws as third-parties and independents would force Nevada "to choose ineffectual means to achieve its aims."

Reinoehl's claim does not affect every voter. Here, Reinoehl is not, as SoS. Cegavske states, making a claim based on harms incurred by every citizen in the United States because as the laws currently are interpreted, neither Republicans and Democrats nor the candidates placed on the ballots by those two parties are harmed—in fact those voters and candidates are aided. Only third party and independent voters, including but not limited to Reinoehl, are directly harmed by not seeing the names of the candidates they wish to support on the ballot. In the case of Nevada, they are harmed by being forced to either not vote or to choose a Republican or Democrat. Since neither Republicans nor Democrats have to follow signature requirements, the law is not "generally applicable."

SoS. Cegavske alleges that Reinoehl does not have standing because she did not allege she suffered an injury in fact. (Doc 63; PageID#431). Reinoehl states, "Defendants have all harmed Reinoehl by rendering her vote meaningless and making it impossible for the candidates and parties with whom she wishes to associate from gaining a majority of the votes." (First Amended

10

Complaint ¶154). Reinoehl has standing to bring this lawsuit because as an independent voter, she was harmed by Nevada's election laws since third parties and candidates for whom she wished to vote were disproportionately prohibited from being candidates on Nevada's ballots as a result of SoS. Cegavske enforcing Nevada's unconstitutional ballot access laws. Federal ballot access does not solely affect the citizens of the state in which the unequal laws are created and enforced nor does it solely effect election candidates. When a state determines who will and will not be on its ballots, it affects United States leadership as a whole, which affects every citizen of the United States. It also injures like-minded voters by preventing them from associating with each other across state lines.

Reinoehl has been injured by not seeing her candidates on the ballot. She has been injured by constantly seeing Republican and Democrat candidates on the ballot and by their ability to avoid election requirements that they take third parties/independents to court for not following. Reinoehl does not ask for all candidate names to be on the ballot so voters can choose between them easily. Nor does she ask this Court to elect her chosen candidates. She only wants election laws enforced equally so Democrats and Republicans also have the same chances as third parties/independents of being removed from the ballot (Nevada does not allow write-in candidates), when they do not have a modicum of support.

Although SoS. Cegavske claims the injury of preventing like-minded voters in Indiana and Nevada from associating with each other by voting for the same candidate is not traceable to her. (Doc 72; PageID#498). However, SoS. Cegavske is the Secretary of State for Nevada and as such is Nevada's chief election official. (First Amended Complaint ¶18). It was her job to see all Nevada's elections laws are upheld equally. In this case, she has failed to require Republican and Democrat candidates show they have a modicum of support in Nevada, while forcing third

parties/independents to show the same. Thus, she encourages like-minded voters not to associate with Reinoehl, independent candidates, third-party candidates, or like-minded voters in states outside of Nevada by always offering Nevada voters Republican and Democrat candidates pre-printed on their ballots and forbidding many third-party and independent candidates from being elected by prohibiting their ballot access.

SoS. Cegavske also alleges that Reinoehl's injury is not likely to be redressed by a favorable judicial decision. However, Reinoehl's injury can be redressed by a favorable decision from this Court because if Republicans and Democrats are subject to the same signature requirements as third parties/independents, Reinoehl and other voters not affiliated with a party will be able to vote, knowing that even though their preferred candidate may not make it on the ballot, Republicans and Democrats will also have the same chance of not being on the ballot. Independents' votes become meaningful when they go to a candidate with an equal chance of being elected.

As a voter who is unaffiliated with any political party, Reinoehl has standing to bring this lawsuit because she, herself, is affected by laws that prevent those for whom she wishes to vote from having their names printed on the ballots while allowing Republicans and Democrats to always have candidate names printed on the ballots.

**C. SoS. Cegaske Is Not Protected By Sovereign or Qualified Immunity.**

The U.S. Supreme Court has held that the Eleventh Amendment does not prevent cases against state officials to enjoin enforcement of an allegedly unconstitutional statute, provided that "such officer [has] some connection with the enforcement of the act." See *Ex parte Young*, 209U.S. at157, 28S.Ct.441. The "crux" of Reinoehl's complaint is not simply pre-printed ballot access laws in Indiana, but rather pre-printed ballot access laws in all the Defendants' states. One state alone cannot and does not elect a president or a majority to the Senate or House of Representatives. It

takes a majority of states to do so, and when a majority of states are unequally blocking ballot access for third-party and independent candidates, then those states as a whole, together, are preventing anyone who votes for a third-party or independent candidate from casting a meaningful vote, since that third-party or independent candidate cannot ever win a presidential election without a majority, nor can a third-party, if elected in one state to the Senate or House of Representatives, form a majority in order to pass legislative changes in the Federal Government.

SoS. Cegavske, herself, states that Reinoehl contends election laws in Nevada violated "her First and Fourteenth Amendment rights under the U.S. Constitution." (Doc.72; PageID 493). Inexplicably, she then states she has qualified immunity because Reinoehl has not alleged SoS. Cegavske violated "clearly established constitutional rights which a reasonable person would have known."

She goes on to argue that Reinoehl does not have a right to "not have to write in a voter's preferred candidate or not to comply with ballot access requirements in order to appear on a ballot." SoS. Cegavske—while defending write-in votes—ignores that she does not allow write-in votes at all in her state because she follows Nevada law, which prohibits them. She also ignores that Reinoehl is not asking the Court to stop candidates from complying with ballot access laws or to force all candidates to be listed on the ballot. Reinoehl just want the Court to force Republicans and Democrats to also follow those laws, as well, since their parties are declining in number and popularity and since their parties are frequently split on whether or not they support the nominated candidate. Because of that, SoS. Cegavske's argument supports Reinoehl's position in her Complaint, including her cited case. Although she goes into a discussion as to why Reinoehl's claims do not support a First and Fourteenth Amendment claim, she does so with a complete

misunderstanding of what Reinoehl is asking the Court to do. (See "Prayer for Relief" First Amended Complaint.)

## CONCLUSION

For the reasons set forth above, SoS. Cegavske's Motion to Dismiss the First Amended Complaint should be summarily denied.

Respectfully submitted,

**Jennifer Reinoehl,** Pro Se Plaintiff 1/10/23
51860 Cheryl Dr.
Granger, IN, 46530
574-302-6088
E-Mail: commercialsonly@juno.com

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that the foregoing was filed by e-mail with the Clerk of the Court January 10, 2023, and it was thereon entered into the ECF system and distributed to all Defendants Attorneys.

    Respectfully submitted,

**Jennifer Reinoehl,** Pro Se Litigant    1/10/23
51860 Cheryl Dr, Granger, IN, 46530
Phone: 574-302-6088;
E-mail: commercialsonly@juno.com