FILED
08/18/2023
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| **JENNIFER J. REINOEHL** ) | |
| PLAINTIFF ) | |
| **v.** ) | **Case No. 1:22-CV-1974 JRS-TAB** |
| **DIEGO MORALES, in his official capacity as Indiana Secretary of State, and CONNIE LAWSON, in her individual capacity.** ) | **Hon. JAMES R. SWEENEY, II** <br> **MAG. TIM A. BAKER** |
| DEFENDANTS ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS DIEGO MORALES' AND CONNIE LAWSON'S MOTIONS TO DISMISS**

## I. Introduction

Plaintiff respectfully opposes the Defendants, Indiana Secretary of State Diego Morales' (herein "SoS. Morales") and former Indiana Secretary of State Connie Lawson's (herein "Ms. Lawson"), Motion for Judgement on the Pleadings. This Court dismissed without prejudice all other plaintiffs—including those who had not yet filed Motions to Dismiss—on grounds this

district was the incorrect district to file those claims. At the time, the Court left both SoS. Morales and Ms. Lawson as defendants, and in the February 21, 2023, scheduling hearing, the Plaintiff was under the impression from the Court, that she had stated a claim against them and accepted the CMP. Immediately after that scheduling hearing, Jennifer Reinoehl (herein "Reinoehl") sent Discovery requests to SoS. Morales and Ms. Lawson and sent suggestions to them for changing the election laws based on states with non-biased laws as ordered by the Court. SoS. Morales and Ms. Lawson responded in a phone call that they wanted 30 days after Initial Disclosures were due (May 8, 2023) to respond to them. At that same time, Defendants suggested to Plaintiff that Ms. Lawson was not a proper Defendant, but never filed anything in relation to that suggestion.

More than 30 days after Initial Disclosures were due, Plaintiff still had not received a response. She contacted Defendants through e-mail and received a response from them July 14, 2023 stating they were planning to object to "certain requests" and others they "intend to provide a response to," but also that they were "drafting a Motion for Judgement on the Pleadings." They asked for a 45-day extension (until August 28, 2023) to provide discovery responses. Reinoehl stated they could have until August 4, 2023, but then she would file a Motion to Compel. On August 4, 2023, their Motion was filed, and Defendants objected to responding to almost all discovery requests.

Defendants have had the Complaint for six months. Although Defendants proposed an extremely lengthy CMP, which Plaintiff did not object to on the grounds she wanted to be fair and which Hon. James R. Sweeney, II, supported on those same grounds after initially questioning its length—the Defendants have shown they only wish to abuse the process and draw this case out as long as possible.

## II. <u>The Complaint Meets Rule 8 Requirements</u>

Defendants argue Reinoehl's Complaint is too long and confusing, even though neither they nor the judge at the case management hearing mentioned difficulty understanding the Complaint. Defendants try to paint Reinoehl as not knowing State Election laws by specifically describing laws for state candidates, such as governor and secretary of state. However, the Complaint, in ¶51, stated "In Indiana, to obtain ballot access under Indiana Code Title 3, Republicans and Democrats need only 4,500 signatures when running to be on the *Federal election ballot*. In contrast, third parties and independents need 45,000 signatures to be on the *Federal election ballot* in addition to numerous other differing bureaucratic requirements." [emphasis added] While Defendants speak about state positions, Reinoehl had only cited the laws for Federal positions. Further, in order to keep the Complaint brief, Reinoehl did not detail the election law biases for every level of candidate. The focus of her Complaint is on Federal election positions: president, vice-president, U.S. Senator, and U.S. Representative.

## III. <u>The Complaint States a Claim</u>

Indiana election laws allow for disparate treatment between the "established" Democrat/ Republican candidates and third-party/ independent candidates. Despite declining numbers of Republicans and Democrats and increasing numbers of third-party members and independents. Defendants have not required Democrats or Republicans to obtain signatures establishing that their Federal candidates had a modicum of support within the state. (Complaint ¶102-108).

The result is that voters who were members of the Democrat and Republican parties or those who wished to vote for Democrat or Republican candidates simply had to make a mark next to the candidate they preferred. In contrast, those wishing to vote for third parties or independent candidates, such as Reinoehl, had to learn how to spell their candidate's name properly and hope that the way they wrote the name was both legible and accepted—even though

Defendants never published a list of acceptable spellings/name formations where voters could see them—inside or outside voting places. (Complaint ¶79, 84). Further, independent voters could not carry buttons or campaign materials into the voting areas to refer to an accurate spelling of their preferred candidates' names in Missouri. (Complaint ¶81).

Citizens vote for candidates that are printed on the ballot in greater proportion than they vote for a third-party or independents because writing in a name is more difficult than checking a box. (Complaint ¶79). It is difficult for voters to find out which write-in candidates will be accepted in their states. (Complaint ¶84). Many voters also do not vote for third-party candidates or independents because they realize that without equal ballot access, these candidates will not get enough votes to win the election and therefore any vote for these candidates is not meaningful. Equal ballot access can be achieved in two ways—by printing all candidate names on the ballot or by requiring all candidate names to be manually written on the ballot. It has long been argued that write-in status is an equal alternative for those candidates who have not established a modicum of support—but unequally, the Republicans and Democrats have never had to prove their candidates have a modicum of support.

Reinoehl has been politically active since before she turned 18. (Complaint ¶35). She has long advocated on social media for voting for candidates and not parties. She frequently has had to sneak slips of paper with candidates' names discretely into voting areas so she can see how to spell the names of the candidates for whom she votes. She is constantly worried that she will be caught and prohibited from voting.

Others have repeatedly accused her of "wasting" her vote because without ballot access statistically third parties and independents do not get elected. (Complaint ¶120). In fact, without equal ballot access, it is impossible for some candidates to get elected. Reinoehl discovered in

2020 that not only was ballot access unequally determined in her state and others, but also that Republicans and Democrats regularly use these unequal ballot access laws to get the Courts to remove third-parties names from the ballots so they can gain votes for their own candidates. (Complaint ¶119). In all those cases, these third-party candidates still maintained write-in status after the court case. Both Democrats and Republicans know that many of those who would have voted for the third-party candidate would no longer do so if s/he could not see the candidate's name on the ballot.

Third-parties, on the other hand, cannot remove Democrats or Republicans from the ballot because Indiana has given Republicans and Democrats a free pass with few steps to follow each year beyond filing their candidates' names. (Complaint ¶122). Indiana ignores that the number of people who support Democrats and Republicans is in decline and that there are often major splits within the Democrat and Republican parties concerning candidates, such as in the 2016 and 2020 elections. (Complaint ¶93, 103-108).

Plaintiff is hindered from associating with the candidates of her choice—she does not have to be a candidate herself to suffer this harm.

Plaintiff finds it bold of Defendants to claim they know the mind of the Court, stating, "Plaintiff's many allegations make it difficult for the Court to accept as true…" (Motion p. 11) Defendants' Brief is written as if they are the Court and tries to speak for the Court instead of allowing the Court to speak for itself.

Defendants make the claim that it is perfectly rational to allow Republicans and Democrats to receive fewer signatures and automatic spaces on every ballot while requiring every other candidate for federal positions to get 45,000 signatures to be on the ballot. They claim candidates must "first [undergo some] sort of procedural safeguards" but at the same time allow Republicans

and Democrats to be exempt from those "safeguards." They fail to state what harm would come if they required all candidates to simply submit the 4,500 signatures that Republicans and Democrats currently must submit.

## IV. Defendants Are Not Entitled to Qualified Immunity

The right to vote is a well-established right under the United States Constitution and has been long upheld by the Supreme Court. See, for example, *Smith v. Allwright*::321 U.S. 649 (1944), *Harper v. Virginia Bd. of Elections*::383 U.S. 663 (1966). The right to vote is so enshrined in the Constitution that four (4) Amendments focused on expanding voting rights. (15th, 19th, 24th, 26th Amendments). "It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote, *Ex parte Yarbrough*, 110 U. S. 651, and to have their votes counted, *United States v. Mosley*, 238 U. S. 383." *Reynolds v. Sims Reynolds v. Sims*, 377 U.S. 533 (1964).

As Reinoehl stated above, she alleged all Defendants violated the First and Fourteenth Amendments of the United States Constitution. (Complaint ¶117, 131-140). The right of association provided for in the First Amendment is another well-established right.

The cited *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) does not apply here because in al-Kidd was arrested with a warrant supported by an individualized affidavit—lawful arrest is not the subject of this case. In the cited *Finn v. New Mexico*, 249 F.3d 1241, 1250 (10th Cir. 2001), the Court stated "case law clearly established that the defendant's decision to terminate plaintiff in retaliation for his protected speech was actionable." The cited *Pearson v. Callahan*, 555 U.S. 223 (2009) does not apply because in that case, "it was not clearly established at the time of the search that their conduct was unconstitutional."

## CONCLUSION

For the reasons set forth above, Defendants' Motion to For Judgement on the Pleadings should be summarily denied.

Respectfully submitted,

**Jennifer Reinoehl,** Pro Se Plaintiff 08/18/23
51860 Cheryl Dr.
Granger, IN, 46530
574-302-6088
E-Mail: commercialsonly@juno.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing was filed by e-mail with the Clerk of the Court August 18, 2023, and it was thereon entered into the ECF system and distributed to all Defendant Attorneys.

Respectfully submitted,

**Jennifer Reinoehl,** Pro Se Litigant 08/18/23
51860 Cheryl Dr, Granger, IN, 46530
Phone: 574-302-6088;
E-mail: commercialsonly@juno.com